[No. 2,486.]

GEORGE SCHMITT v. PEDRO GIOVANARI.

43  617
121  67

CONFIRMATION OF MEXICAN GRANT.—A confirmation of a grant of land made by Mexico, under the provisions of the Act of Congress of March 3d, 1851, necessarily requires a confirmee, and, although the confirmation may inure in law or in equity to the benefit of other persons than the confirmee, yet the person whose claim is confirmed is the confirmee.

SALE OF LAND UNDER SPANISH LAW.—By the Spanish law, the vendor of land was under the implied obligation to make his sale and conveyance effective, and a title afterwards acquired by him inured to the benefit of the vendee.

PERFECT TITLE ACQUIRED BY MEXICAN GRANT.—A grant of land by Mexico did not convey a perfect title, unless there was a segregation and a judicial delivery of the possession of the quantity of land granted.

PASSING TITLE TO MEXICAN LANDS.—The Spanish word " cedo " was the ordinary word used in Mexican conveyances to pass title to lands.

CONVEYANCE OF LAND UNDER MEXICAN LAW.—By the Mexican law, before the acquisition of California by the United States, it was not necessary that an instrument conveying land should express a consideration in order to pass the title of the vendor.

CONSTRUING DECREE CONFIRMING MEXICAN GRANT.—The construction given by the Supreme Court of the United States to its decree confirming a Mexican grant of land in California, is of binding authority in the State Courts.

EFFECT OF DECREE CONFIRMING MEXICAN GRANT.—A decree of a Court of the United States confirming a Mexican grant to one who had purchased from the original grantee, and which declared that the confirmation should be without prejudice to the legal representatives of the original grantee, and should inure to the benefit of any person who owned the land by any title derived from the original grantee, gives a perfect title to a purchaser

from the confirmee, who bought from him before he presented his petition for a confirmation to the Commissioners appointed under the Act of Congress of March 3d, 1851, as against one who bought from him after the confirmation.

PURCHASER FROM GRANTEE OF MEXICAN GRANT.—One who bought land included in a Mexican grant before the presentation of a petition for its confirmation, became entitled to have a confirmation of his claim, but if he neglected to apply for the same, and suffered his grantor to present a petition and have a confirmation made to such grantor, he must, in order to obtain the benefit of the confirmation, so far as the legal title is concerned, rely on the estoppel springing from his vendor's deed, unless there is a clause in the decree of confirmation giving him the benefit of the same.

APPEAL from the District Court of the Seventh Judicial District, Sonoma County.

The defendant recovered judgment in the Court below, and the plaintiff appealed.

The other facts are stated in the opinion.

*William D. Bliss,* for Appellant.

The grant made by Governor Alvarado to Peña was of a specific tract of land, with defined boundaries. Under that grant and the decree of the Departmental Assembly of the Californias, and the Treaty of Guadalupe Hidalgo, Peña and those holding under him acquired a perfect title in fee simple to all the land within those boundaries, including the premises in controversy. (*Minturn* v. *Brower,* 24 Cal. 644.)

The deed from Peña to Vallejo conveyed the title to the entire rancho.

The deed from Vallejo to Andres Hoeppner, dated August 12th, 1846, was sufficient, under the law then in force in California, to transfer the title to the land and the right of possession. (*Havens* v. *Dale,* 18 Cal. 359; *Merle* v. *Matthews,* 26 Cal. 455.)

As the deed was made to Hoeppner after his marriage, and for a valuable consideration, the land was acquired by onerous title, and became a part of the common property under the Mexican law. (*Fuller* v. *Ferguson,* 26 Cal. 546.)

Upon the death of Andres Hoeppner, intestate and without issue, the whole title to the land passed to his surviving wife. (Statute of Husband and Wife, 1850, Sec. 11.)

The deed from Anna Hoeppner to James R. Travers, and the conveyance from Travers to plaintiff, conveyed to plaintiff one undivided half of the rancho, and entitled him to a recovery against the defendant. (*Collier* v. *Corbett*, 15 Cal. 183; *Stark* v. *Barrett*, 15 Cal. 361.)

*B. S. Brooks*, for Respondent.

The grant was an inchoate one, and the fee remained in the Government.

The instrument purporting to be a conveyance from Vallejo to Hoeppner, did not convey the title. On this point the ancient common law of England and that of Spain were almost identical. (See *Schott* v. *Burton*, 13 Barb. 173, and cases there cited.)

No authority can be cited to show that under the Spanish law the instrument would operate as a deed. (Febrero Novissimo 1, Tit. VI, Cap. 2; De los Instrumentos, ib., Lib. 2, Tit. IV, Cap. 2, Sec. 3; *Hoen* v. *Simmons*, 1 Cal. 121; Demat's Civil Law, Cushing's ed., Vol. 1, Art. 145.)

Hoeppner did not present his claim for confirmation, and so far as he was concerned the land became a part of the public domain. The whole grant was confirmed to Vallejo.

The object of the decree of the Supreme Court of the United States was to approve so much of the decree of the District Court as confirmed the claim presented, and to strike out the proviso added to it in the District Court, as matter over which the Board of Land Commissioners had no jurisdiction, and which they had often said could not be adjudicated in these proceedings. (*United States* v. *Sutter*, 21 How. S. C. R. 170; *Townsend* v. *Greely*, 5 Wallace, 535; *United States* v. *Covillaud*, 1 Black, 341.)

But the proviso could not, if it had any effect, inure to the benefit of the plaintiff. It went upon the supposed inefficacy of the deed from Peña to Vallejo, because Peña could not deed what he had not, and his deed did not convey the after-acquired title.

We believe it to be also established that the decree of confirmation vests the legal fee in the confirmee, and in him alone; that he is entitled to the possession of the land, and that any rights which others may claim through the same source of title must be asserted in a Court of equity; and that all claims of an imperfect or inchoate character, founded on Spanish or Mexican grants, not presented for confirmation, are extinguished. (*Estrada* v. *Murphy,* 19 Cal. 272; *Touchard* v. *Crow,* 20 Cal. 160; *Castro* v. *Hendricks,* 23 How. U. S. 441.)


By the Court, RHODES, J.:

Action of ejectment to recover possession of a portion of the Agua Caliente Rancho, which was granted to Lazaro Peña on the 13th day of July, 1840, by the Governor of California. On the 14th of December, 1839, Peña executed to M. G. Vallejo a formal conveyance, purporting to convey to him the rancho; and on the 12th of August, 1846, Vallejo executed and delivered to Andres Hoeppner an instrument in writing, which the plaintiff relies upon as a conveyance of the rancho. Hoeppner was then married to Anna Hoeppner, but between 1855 and 1858 he died intestate and without issue. Anna Hoeppner, December 21st, 1858, conveyed all her right, title, and interest in the rancho to Travers; and the plaintiff claims title to the undivided half of the rancho under that deed. Vallejo filed with the Board of Land Commissioners his petition for the confirmation of his claim to the rancho, and such proceedings were had in the matter that the claim was confirmed by the District Court in 1859;

and in 1862 the decree was affirmed by the Supreme Court. The difference between the language of the decree of the District Court and the mandate of the Supreme Court will hereafter be noticed. It may, however, be remarked here, that a confirmation of a claim or title under the provisions of the Act of Congress of March 3d, 1851, necessarily requires a confirmee. Vallejo was the only petitioner; and although the confirmation may inure in law or in equity to the benefit of other persons, either by the terms of the decree of the District Court or by operation of law, the decree confirmed the claim of Vallejo, and he will be regarded as the confirmee. The defendants deraign title through two deeds executed by Vallejo in 1863 and 1864; and they also claim through another deed, which it is unnecessary now to notice. The defendants had judgment, and the plaintiff appeals from the judgment and the order denying a new trial.

The date of the conveyance of Peña to Vallejo is 1839, while that of the grant is 1840. In confirming the grant the Supreme Court treated the date—1839—as a clerical error for 1840, and that must have been the view also of the District Court, for the claim of a petitioner will not be confirmed unless he show a prima facie title; and we are of the opinion that it must be regarded as a clerical error, and that 1840 was the true date of the execution of the conveyance.

If, however, we are wrong in this, then the operation of the deed, which was very full and formal, caused the title, when the grant was afterwards made to Peña, to inure to the benefit of Vallejo. Under the Spanish law the vendor was under the implied obligation to make his sale and conveyance effective. He was bound to defend the title, if notified of a suit brought against the purchaser, and if unsuccessful in this he was required to indemnify the purchaser. (See Schmidt, Civ. Law of Spain and Mex., 135; Fuero Juzgo, Law 9, Book 5, Title 4; Partidas, 5, Law 32, Title 5.)

It is insisted by the plaintiff that the grant to Peña con-

veyed a perfect title, and reliance is placed on the authority of *Minturn* v. *Brower*, 24 Cal. 644, to show that such title needed no confirmation under the Act of Congress of March 3d, 1851, and was unaffected by the confirmation to Vallejo. In that case it *was conceded* by the parties that a perfect title had been granted to Peralta, but we have not found in any subsequent case, in which that doctrine has been invoked, that the grantee acquired a perfect title. In this case it does not appear that the amount of land which was granted did not exceed the area within the boundaries mentioned, and the contrary will be inferred from the decree of the Departmental Assembly, by which the grant is approved "to the extent of two and a half leagues in length by a quarter of a league in width." A segregation and a judicial delivery of the possession of the quantity of land granted became essential to the vesting of a perfect title.

The plaintiff claims that the confirmation, whether it be regarded as a confirmation of the title granted by the Mexican Government, or only a confirmation of the claim of Vallejo, inured to the benefit of the vendees of Vallejo; and he relies not only upon the terms of the decree of the District Court, but also upon the rule in *Estrada* v. *Murphy*, 19 Cal. 272; *Clark* v. *Lockwood*, 21 Cal. 222; *Wilson* v. *Castro*, 31 Cal. 438, and other cases, that the confirmation of a claim under the provisions of the Act of Congress of March 3d, 1851, inures to the benefit of the grantees of the confirmee, so far as the legal title is concerned. In each of the cases referred to, in which that rule was applied, the conveyance was executed intermediate the filing of the petition and the confirmation; and in such case it is immaterial whether the deed conveyed the land or only the right, title, and interest of the confirmee; for in either form it transferred all the rights of the confirmee in or to the land—one of which was the right to have a confirmation of his claim or title, a segregation of the land which had been granted, and a release or

conveyance on the part of the United States. But where, as in this case, the conveyance was prior to the filing of the petition, other rules would be applicable. The Act of 1851 (Sec. 13) provides that all lands, the claims to which shall not have been presented to the Commissioners within two years from the date of the Act, shall be deemed held and considered as a part of the public domain of the United States; and, as the claim of the vendee would be barred by his failure to present his claim as provided by the Act, he must, in order to obtain the benefit of the confirmation of the claim of his vendor, so far as the legal title is concerned, rely on the estoppel springing from his deed. It is unnecessary, however, for the purposes of this case, to determine whether the instrument executed by Vallejo to Hoeppner was, under the law in force at the time of its execution, sufficient to create an estoppel of such a character that the after-acquired title of Vallejo would feed the estoppel, and thus inure to the benefit of his vendees; for, if that instrument amounts to a conveyance, the decree of confirmation of the District Court settles the question as to the transmission of the title.

That instrument, as translated from the Spanish language, is as follows:

"He who subscribes, certifies that having bought lawfully and in due form of the citizen, Lazaro Peña, the land of Agua Caliente, to which the preceding approval of the Departmental Assembly of Alta California refers, I cede and transfer all the rights which I have to the said land, in favor of Don Andres Hoeppner, who will make the use of it which most suits him. And for the necessary ends and uses I give this in Sonoma, the 12th of August, 1846.

"M. G. VALLEJO."

"Witnesses: A. A. HENDERSON, Asst. Surgeon U. S. ship Portsmouth; JACOB PLEESE."

The instrument was indorsed upon the decree of the De-partmental Assembly, and delivered to Hoeppner.  It was proven that its consideration was an agreement on the part of Hoeppner to teach music to the family of Vallejo, but that he failed to fully perform his agreement.  There is no evidence in the record that Vallejo delivered the possession of the rancho to Hoeppner, except what is found in the tes-timony of Dr. Leavenworth, who purchased of Hoeppner a portion of the rancho, in 1848, or the early part of 1849. He testified that when he went to see the land, after his pur-chase, he found Anna Hoeppner, the wife of Andres Hoepp-ner, in possession.

In *Mulford* v. *Le Franc*, 26 Cal. 108, it was held that the word "cedo"—here translated "I cede"—was the ordinary word used in Mexican conveyances to pass title to lands; and we see no reason to doubt the correctness of that decision.

It is also objected that the instrument is insufficient as a conveyance, because it does not express a consideration, but we hold, upon the authority of *Havens* v. *Dale*, 18 Cal. 366, and *Merle* v. *Matthews*, 26 Cal. 455, that it is not essential that the instrument, intended as a conveyance, should express the consideration or the price of the land.   This instrument was before the Supreme Court of the United States, in *Steinbach* v. *Stewart*, 11 Wal. 566, and the Court pronounced it a con-veyance of the title to the rancho.   The larger portion of the instruments intended as conveyances, which were exe-cuted in California about the date of this instrument, were as devoid of form as this one, and in holding that this instru-ment amounts to a conveyance, we only follow the current of the authorities in this State.

The decree of confirmation of the District Court contains the following proviso: "Provided that this confirmation of the above land to the said M. G. Vallejo shall be without prejudice to the legal representative of Lazaro Peña, the original grantee, or whoever may be entitled to said lands

under him; and said confirmation to said Vallejo shall inure to the benefit of any person or persons who may own or be entitled to the said land by any title, either at law or in equity, derived from the original grantee by deed, devise, descent, or otherwise."

The decree of the Supreme Court is "that the decree of the said District Court in this cause, in so far as it confirms the original grant, be and the same is hereby affirmed." In *Steinbach* v. *Stewart*, supra, it was argued on the part of the plaintiff that the proviso in the decree of the District Court was annulled by the decree of the Supreme Court; but it was held that no portion of the decree of the District Court was reversed, and that that decree was left in force to its full extent. The construction given to those decrees in that case is of binding authority here; and we accordingly hold that the confirmation inured to the benefit of those holding title under or through the conveyance executed by Vallejo to Hoeppner, and vested in them the legal title to the rancho.

Judgment reversed, and cause remanded for a new trial.