## J. BIXBY ET AL. v. H. K. W. BENT ET AL.

EXCHANGE OF LAND—MEXICAN LAW—LICENSE TO OCCUPY—MEXICAN CLAIM—DELIVERY OF POSSESSION.—In 1844 J. and S. executed a deed of exchange, whereby the former gave to the latter his right and interest in the Rancho Yucaipa in exchange for the right and interest of the latter in the Rancho Palos Verdes. There was no such ranch as Yucaipa, but the parties intended to designate by that term another ranch in which J. had an undivided interest. S. had no title to the Palos Verdes Rancho, but, under a license of occupation, issued to him and three brothers and a sister, in the year 1827, had, in common with them, occupied the ranch until the year 1840, when he abandoned the same to occupy another ranch granted him by the Government. Neither of the parties ever delivered to the other possession. In 1846 the Mexican Government granted the Rancho Palos Verdes to two of the brothers, and the grant was afterwards confirmed to them by the tribunals of the

United States; but pending the proceedings for confirmation (in 1852) the grantees executed a declaration of trust, declaring that each of the brothers and the heirs of the sister (then deceased) had equal rights in the ranch and in the grant. In an action for partition, upon a question between the successors in interest of J. and the heirs of S.,

*Held:* The act of exchange was a nullity from the beginning, because one of the ranches sold had no existence in fact, and neither of them was vendible by the parties to the exchange; because neither of them had any proprietary title which he could transfer to the other; and because neither, during the life-time of the parties, ever gave or received possession.

ID.—ID.—ID.—ID.—Under the Mexican law, a license by the Government to occupy land was a mere personal privilege, and conveyed no estate or interest, and could not be transferred or alienated.

ID.—ID.—Equality of right or interest is required by the civil and common law to render valid an exchange of property.

ID.—ID.—DELIVERY OF POSSESSION.—Delivery of possession was also essential under the Spanish law to the validity of an exchange; and so at the common law, entry must be made on both sides; for if either party die before entry the exchange is void.

AFTER-ACQUIRED TITLE—ESTOPPEL—MEXICAN LAW.—There is no principle of the Spanish law, making an after-acquired title inure to the benefit of a former grantee.

CONSOLIDATION OF ACTIONS—PARTITION—PRACTICE.—Pending an action for partition, one of the parties brought an action against other parties to enforce a declaration of trust, made by the latter. *Held:* The actions were properly consolidated.

AMENDMENT OF FINDINGS AND JUDGMENT—PARTITION—APPEAL—JURISDICTION—PRACTICE.—Pending proceedings to amend the findings and interlocutory decree in an action of partition, an appeal was taken from the decree; and afterwards the Court made the amendments.

*Held:* The Court had power, after the filing of the findings and decree, to correct, amend, or modify them, in any respect, so as to give true expression to the decision of the Court as to the rights of the parties; and notwithstanding the taking of the appeal while the proceedings to amend were *in fieri*, the power over the case had not ceased.

ID.—ID.—ID.—ID.—ID.—FINAL JUDGMENT—APPEALABLE INTERLOCUTORY JUDGMENT.—Proceedings to modify or amend the decree being *in fieri*, the rights of the parties had not been definitely ascertained by the Court, as required by the law regulating the proceedings in partition. The trial of the case as to the rights of the parties was incomplete. The suit was still pending and had not been disposed of by an appealable interlocutory decree. The appeal from the decree pending proceedings for its modification was therefore premature. The modified decree was the only appealable judgment.

ID.—APPEALABLE ORDER.—The order modifying the interlocutory decree was not appealable.

APPEAL from an interlocutory judgment and from an order amending the same and allowing additional findings of fact,

and from the amended interlocutory judgment, and from an order denying the plaintiff's motion for a new trial, in the Superior Court of the County of Los Angeles. HINES, J.

The original findings and interlocutory decree were filed and entered February 8, 1881. A motion for a new trial was made February 18, 1881. A motion to amend the findings and interlocutory decree was made March 4, 1881. The appeal was taken from the original decree February 8, 1881.

*Graves & Chapman,* for Appellant McDonald.

It is claimed that the deed of exchange was void under the Mexican law because the land was public, or, rather, the title still in the Mexican Government. The particular law cited for this proposition is: " Things belonging to the nation, or to towns, can not be alienated without royal permission." (Schmidt's Civil Law of Spain and Mexico, 113, Art. 505.

This has nothing to do with the question of the effect of the deed of a private person to a part of the public lands in which he has nothing at the time, but afterward acquires it. For deeds by private parties to lands at the time public, have been held good and sufficient to pass a subsequently acquired title from the Government, and this, when the title was acquired under the preëmption and homestead laws of the United States. (*Kirkaldie* v. *Larrabee,* 31 Cal. 458; *Christy* v. *Dana,* 34 id. 549; S. C., 42 id. 178; *Vallejo L. A.* v. *Viera,* 48 id. 577.) And it has been decided by this Court, that the law of Mexico was the same. (*Schmitt* v. *Giovanari,* 43 id. 621.)

The next question is, did the doctrine of estoppel obtain in the Mexican law? and as resulting from this question, if José Diego had no title at the time the deed was made, but afterwards acquired it, did it pass to Santiago Johnson or his heirs?

This question was directly decided by this Court in our favor in *Schmitt* v. *Giovanari,* 43 Cal. 621. (*Fowler* v. *Smith,* 2 id. 570.) This proposition results, too, out of the principles of Mexican law referred to by the Court. Both a sale and exchange were onerous contract. (Schmidt's Mexican Law, Art. 693 and 607.)

And in every onerous contract, the party who transfers takes upon himself the obligation referred to in the case cited. (Schmidt, Art. 444–446.)

The fact that Santiago Johnson never had possession of the Palos Verdes, did not prevent the deed from vesting the title, or operating upon a subsequently acquired title under Spanish law, any more than under our law.

The Court erred in consolidating the two actions. (C. C. P., § 1048.) The Court erred in making additional findings after a notice of intention to move for a new trial, and certainly after a statement had been prepared and served. Issues ought to be settled before judgment. (*Kiel* v. *Reay,* 50 Cal. 61.)

But surely, the Court had no power to do these things after an appeal taken. (*Baggs* v. *Smith,* 53 Cal. 88.)

*Thom & Stephens,* also for Appellants.

*S. Haley, F. H. Howard,* and *J. Robarts,* for Respondents.

The land purported to be exchanged by Sepulveda was the public domain of the Mexican nation. " Things belonging to the nation, or to towns, can not be alienated without royal permission." (Schmidt, Art. 505.)

But appellants claim that Sepulveda had a temporary license to occupy; even if that was so, he had only the usufruct of the land. " He could not sell nor mortgage the property of which he has the usufruct." (Schmidt, Art. 239.) The contract was absolutely void on grounds of public policy. (1 Escriche, 448, 449, words, *"Bienes realengos."*)

The contract imposed no obligation on Sepulveda to deliver Palos Verdes, an illegal act which exposed him to a penalty.

The contract, if not void, was a mere executory one, and rescinded by the parties. There was no delivery of possession by either party.

" The exchange carries with it the same obligations as the sale, hence it is that each one of the parties exchanging is obliged to deliver the thing promised to the other," etc. (2 Escriche, 715, word, " *Permuta.*")

Hence Johnson, on account of his failure, having disposed of that which he had contracted to give therefor, lost his

right to demand a performance of the contract, and conceding (for argument's sake and not otherwise) there would have remained a right of action in Sepulveda, if he could have delivered possession thereafter within four years, against Johnson. (Schmidt, Art. 473.)

McKEE, J.:

Appeal from an interlocutory decree and an order denying the motion for a new trial, in an action for partition of the Rancho Los Palos Verdes, in Los Angeles County, and from an order allowing a modification of the decree.

Appellants assert a title as tenants in common with the other parties to the action, derived from the heirs of Santiago Johnson, through what purports to be an act of exchange executed by Johnson and one José Diego Sepulveda, March 15, 1844, whereby the former gave to the latter his right and interest in a ranch called Yucaipa in exchange for the right and interest of the latter in the Rancho Los Palos Verdes.

It appears by the findings of the Court below, that four brothers, viz., José Loretto, Juan, Ygnacio, and José Diego Sepulveda, and their sister, Teresa Sepulveda, occupied the Rancho Los Palos Verdes, under a license of occupation issued to them by the Mexican authorities in the year 1827. José Diego continued to occupy the ranch with his brothers and sister until the year 1840, when he abandoned his temporary occupation under the license to occupy; and, at the time of the treaty of exchange between Johnson and him, he had no possession, right, title, or interest in the ranch, and the ranch itself was part and parcel of the public domain of the Mexican nation. At the same time there was no such ranch known as the "Yucaipa," of which Johnson had any possession, or to which he had any right or title, nor was there any definite tract of land known by the name of "Yucaipa;" but the term was applied to an indefinite scope of country, embracing a portion of what was then known as the Rancho San Jacinto y Gorgonio, of which Johnson then had possession, and to an undivided interest in which he claimed title as a tenant in common with others, and a portion of the Rancho San Bernardino, part of which was then in possession

of José Diego Sepulveda, under a Mexican grant made in 1842 to himself and others. And when the parties made the treaty of exchange, they meant and intended, by the use of the term "Yucaipa," to designate the Rancho San Jacinto y Gorgonio, and no other or different ranch or lands.

But the exchange was never completed; for neither of the parties to it ever delivered to the other possession. Sepulveda never received possession of Yucaipa or of San Jacinto y Gorgonio; Johnson never received and never had possession of any part of Los Palos Verdes. And, in fact, finding that he could not obtain possession, Johnson sold and conveyed the ranch San Jacinto y Gorgonio, April 2, 1844, to one Roubidoux, to whom he delivered possession, and Roubidoux and his grantees have since kept and held possession, and become the confirmees and patentees of the ranch.

More than two years after this attempted exchange, viz., June 3, 1846, the Mexican nation granted the Rancho Los Palos Verdes to José L. and Juan Sepulveda, and gave them juridical possession of the same. This grant was afterwards finally confirmed to them by the tribunals of the United States in the year 1856. Meantime, the grantees and confirmees, in the year 1852, by an instrument in writing, declared that each of the brothers and the heirs of the sister Teresa, who had died, had equal rights with them in the ranch and the grant of 1846; and they agreed that each of them might enter upon the ranch and enjoy and use the same to the extent of his interest. Under this declaration of trust José Diego entered upon the ranch in the year 1853, made valuable improvements thereon, and, at all times from the year 1853 until the time of his death, in 1869, held continuous, open, notorious, and exclusive adverse possession of the interest in the ranch which he had received from his brothers—the grantees of the ranch—under the declaration of trust. On April 23, 1869, he died seised and possessed of this interest in the ranch, and devised the same to his surviving widow during her life, and the remainder over to his children; and his devisees and the survivors of them have always, since his death, resided upon, occupied, and used the ranch in the same manner and to the same extent that he held, used, and occupied it, before his death, under the declaration of trust.

Santiago Johnson died in 1847. In his life-time he never had possession of any part of Los Palos Verdes, and he made no claim to any right or interest therein under the exchange. After his death neither his heirs nor successors in interest asserted any such claim until José Diego Sepulveda had entered on the ranch in the year 1853, by consent of his brothers, under the declaration of trust.

Such are the facts, as found by the Court, out of which arises the claim of title asserted by the appellants to the undivided one fifth of Los Palos Verdes, which had been acquired by José Diego Sepulveda in 1853. It is insisted that the facts have not been established by the evidence in the case; but the evidence, as it appears in the transcript, is ample to sustain the findings of the Court. The question therefore arises, whether the act of exchange executed by Sepulveda and Johnson was of any validity.

*Ex vi termini* the word exchange imports a reciprocal contract. Each of the parties to it is individually considered in the double capacity of vendor and vendee of the things which form the subjects of exchange (Domat, 448, 450; Escriche, term "Permuta," 1346); and in that capacity they enter into mutual obligations one with the other. (Domat, 447.) Says Mr. Justice Heydenfeldt, in *Fowler* v. *Smith*, 2 Cal. 569: "Under the rule of the civil law, a sale of property, when made by the use of general terms, implies an obligation on the part of the seller to cause the buyer to have the thing which is sold by a title of proprietor, to deliver him possession, and to defend him against whatever may deprive him of possession. Possession seems to be looked upon as the great object of purchase and the great symbol of right." People, says the civil law, buy things for no other end but to have them in their own power and to possess them. Those general principles of the civil law are applicable alike to sales of real or personal property. That law makes no distinction between the two species of property. The one is regarded as of equal dignity with the other. Applying these principles to the facts of this case, the solution of the question presented is relieved of any difficulty.

Unquestionably the parties consented to the exchange of the ranches mentioned in their act of exchange; but that

bound them to perform reciprocally what they promised to one another. Neither of them, however, had any proprietary title to contract for, nor any possession to deliver. When they engaged to exchange, Sepulveda had no possession of the Los Palos Verdes, because he had abandoned his temporary occupation under the license to occupy, and acquired a possession in the Rancho San Bernardino, under the grant of 1842, to himself and others. Johnson had no possession of the so-called "Yucaipa," because there was no such ranch, and he was in the actual possession of the ranch San Jacinto y Gorgonio. And as the "Yucaipa" had no existence, and Los Palos Verdes was part of the public domain of the Mexican nation, neither of the parties had any right or interest to transfer to each other. Sepulveda had acquired no right or title by his temporary occupancy under the license of occupation, because "such a license is a mere personal privilege, can be conferred by parol, or in writing, conveys no estate or interest, and is revocable at the pleasure of the party making it.    *    *    *    It ceases with the death of either party, and can not be transferred or alienated by the licensee, because it is a personal matter and is limited to the original parties to it. In no sense is it property descendible to heirs." (*De Haro's Case*, 5 Wall. 627.)

It is true, that prior occupation and cultivation under a provisional license to occupy, have been frequently recognized by the Mexican authorities as an equity in favor of those who applied for a grant of the land; and as an equity it has been recognized and enforced by the United States Courts in contests between confirmees of grants within the same general outboundaries. (*United States* v. *Armijo*, 5 Wall. 444.) But if it could be inferred that Sepulveda, by virtue of his prior occupation of Los Palos Verdes, jointly with his brothers, from the year 1827 until the year 1840, acquired such an equity as was recognized by the Mexican Government, when it granted the ranch to his two brothers on the third of June, 1846, yet, as Johnson had no equal equitable right in "Yucaipa," because it had no existence, there was not that equality of right or interest which was required by the civil and the common law to render valid an

exchange of property. The things sought to be exchanged must be equal. (Escriche, title "Permuta," 1346.) An exchange, says Blackstone, is a mutual grant of equal interests, the one in consideration of the other. The estates exchanged must be equal in quantity; not of *value*, for that is immaterial, but of *interest;* as fee simple for fee simple, a lease for twenty years for a lease for twenty years, and the like. (*United States* v. *Castillero,* 2 Black. 322.)

Delivery of possession was also essential to the validity of exchange. Possession was the great object of the engagement between the parties. It consummated the sale and made the buyer master and possessor of the thing. Without delivery of possession the buyer had no right to the enjoyment, use, and disposition of the thing sold. Until that was accomplished, all things remained in the same state as though there had been no sale. The seller remained master of the thing itself and of its fruits. (Domat, 328, 346.) So, at the common law, entry must be made on both sides; for, if either party *die* before entry the *exchange* is void. (*United States* v. *Castillero,* 2 Black. 323.)

Because, therefore, one of the ranches sold had no existence in fact, and neither of them was vendible by the parties to the exchange; because neither of them had any proprietary title which either could transfer to the other; and because neither, during the life-time of the parties, ever gave or received possession, the Act of Exchange was a nullity from the beginning. (Domat, 349, 417.)

Being null, the subsequent title acquired by Sepulveda in the year 1853, from his brothers, under the grant to them from the Mexican nation in 1846, did not inure to the benefit of the heirs of Johnson. Such a title does not inure to the benefit of a party to a deed of exchange, which only purports to "exchange the right and interest corresponding to each one" in the designated ranches, but conveys no certain estate, contains no covenants of warranty, has never been consummated by delivery of possession in the life-time of the parties, and is inoperative and void. Besides, as has been said in *Norcum* v. *Gaty,* 19 Mo. 68, we know of no principle of the Spanish law making an after-acquired title inure to the benefit of a former grantee.

*Schmitt* v. *Giovanari*, 43 Cal. 617, does not conflict with these views. That case was ejectment against one in possession who derived title from a Mexican grant by purchase from the confirmee of the grant; and it was held, that the decree of confirmation by express terms, inured to the benefit of the purchaser. But the Court refused to determine whether the instrument in writing, dated August 12, 1846, by which the purchaser acquired his right, and obtained possession from the confirmee, was, under the law in force at the time of its execution, sufficient to create an estoppel of such a character that the after-acquired title would feed the estoppel, and thus inure to the benefit of his vendees. The determination of that question was not necessary in the case. Our conclusion is that the appellants as successors in interest of the heirs of Johnson acquired no right or title in the ranch under the instrument of exchange.

Specifications are made of several alleged errors of law committed by the Court on the trial of the case, in sustaining or overruling objections made to questions asked of witnesses in their direct and cross-examinations by the attorneys of the plaintiffs, and of certain of the defendants; but as they all relate to the void deed of exchange, the appellants were not injured by the rulings. And conceding that they were errors—which would by no means appear if it were necessary to pass upon them—they were errors without injury.

It is also contended that the Court erred in consolidating an action pending before it, entitled *Sepulveda* v. *Sepulveda,* with this action of partition. At the commencement of the action of partition in 1874, no patent for the ranch had been issued. Patent was not issued until 1880. Upon its issuance the heirs of Diego Sepulveda commenced an action against other parties to the action of partition for the enforcement of the declaration of trust of 1852. Both causes of action, therefore, related to the partition of the ranch; they were not distinct causes of action, and it was proper for the Court to consolidate them and dispose of the issues involved in them, in the trial of the action of partition.

Lastly: It is contended that the Court had no power to make the order of May 5, 1881, amending the finding and modifying the interlocutory decree of February 8, 1881, be-

cause an appeal had been taken April 5, 1881, from the decree. But the Court had power after the filing of the finding and decree to correct, amend, or modify them in any respect, so as to give true expression to the decision of the Court as to the rights of the parties; and proceedings for that purpose were *in fieri* when the appeal of April 5, 1881, was interjected. But notwithstanding that appeal the power of the Court over the case had not ceased. (*Hastings* v. *Cunningham*, 35 Cal. 552.) Proceedings to modify or amend the decree being *in fieri*, the rights of the parties had not been definitely ascertained by the Court, as required by the law regulating the proceedings in partition. (§ 763, C. C. P.) The trial of the case as to the rights of the parties was incomplete. The suit was still pending and had not been disposed of by an appealable interlocutory decree. (*Crowther* v. *Rowlandson*, 27 Cal. 376; *Hinds* v. *Gage*, 56 id. 486.) And the appeal which was taken from the decree which was filed, pending proceedings for its modification, was, therefore, premature. The modified decree, which resulted from the proceedings, became, in effect, the rendition of a new decree, which settled the rights of the parties in the ranch, according to the decision of the Court, and was the only appealable judgment. (*Mann* v. *Haley*, 45 Cal. 63.) It follows that an order modifying an interlocutory decree in an action of partition is not appealable. The appeal must be taken from the decree itself. The appellants did appeal from the modified decree and from the order denying their motion for a new trial, and upon those appeals the decree has been reviewed.

Appeal from the so-called interlocutory decree filed February 8, 1881, dismissed. Judgment and order denying motion for new trial affirmed.

Sharpstein, J., concurred.

Morrison, C. J., and Myrick, J., specially concurring:

We concur in the conclusions and in the judgment.

Ross, J., being disqualified, took no part in the decision of this case.