Martin v. The Ashland Mill Co.

JOSEPH A. MARTIN, Appellant, v. THE ASHLAND MILL COMPANY, Respondent.

Kansas City Court of Appeals, April 4, 1892.

1. **Bailment:** SALES: EXCHANGE. Plaintiff deposited with the defendant mill company wheat with the understanding that on demand he should be entitled to so many pounds of flour per bushel. *Held*, not a bailment nor a sale, but an exchange.

2. **Sales:** ELEMENTS OF. The elements of a sale are, parties competent to contract, mutual consent, absolute property in the thing transferred and a price in money.

3. **Exchange:** SALE: RULES. An exchange is a reciprocal contract for the interchange of property, each party being a vendor and a vendee as in sales; the title is absolutely transferred, and the same rules are applicable as in sales.

4. **Customs:** CONSTRUCTION OF. Customs and usages must be construed strictly, even more so than any act of parliament that alters the common law.

5. ———: VARYING RULE OF LAW: UNREASONABLE. A custom cannot be permitted to vary a general and well-settled rule of law; nor will parties be held to enter into contract with reference to an unreasonable custom that leads to absurd consequences, especially when unknown.

6. ———: PARTICULAR BUSINESS: KNOWLEDGE. A person entering into a contract is not bound by the usage of a particular business, unless it be so general as to furnish a presumption of knowledge, or it is proved he was acquainted with it.

*Appeal from the Boone Circuit Court.*—HON. JOHN A. HOCKADAY, Judge.

AFFIRMED.

*Eli Penter* and *C. B. Sebastian*, for appellant.

(1)   The transaction constituted a sale, and was not a bailment.   *Coleman v. Lipscomb,* 18 Mo. App.' 443, and authorities there cited; 2 Parsons on Contracts [7 Ed.] p. 133, note 5.   (2)   In order to do away with the well-established rule, which makes this transaction a sale and renders the defendant liable, the trial court holds that the defendant must show two things: *First.* That at the time of the delivery of the wheat there was a general and uniform custom that wheat so delivered as aforesaid, and under like agreements, was received by the miller, and the flour to be returned therefor, pursuant to said agreement, was held by him subject to the risk of the party entitled thereto of being destroyed by fire.   *Second.*   That the plaintiff and defendant, knowing of the custom at the time, contracted in the agreement first aforesaid with reference to it.   I am aware that this court has a well-established rule that it will not reverse the judgment of the trial court where there is any evidence to sustain it.   In this case we ask a review of the judgment, because there was no evidence to sustain it.   (3)   Admitting that there is some evidence of an established general and uniform custom, which we do not admit, plaintiff would not be bound by it, unless he had knowledge of it at the time he delivered the wheat and contracted with reference to it. *Hyde v. Book & News Co.,* 32 Mo. App. 298.   There was no evidence that the plaintiff ever heard of such a custom until after the mill burned, and this court will not permit a judgment to stand where there is no evidence] to sustain it.   *Krider v. Milner,* 99 Mo. 145;

*Bruen v. Fair Ass'n*, 40 Mo. App. 425; *Avery v. Fitzgerald*, 94 Mo. 207.

*Wellington Gordon* and *E. M. Bass*, for respondent.

(1) In the case of *Inglebright v. Hammond*, 19 Ohio, 337, the court in this case also held that, "Where a person taking his wheat to a mill to be ground, by the assent of the miller, mingles it with the wheat of the miller, he does not thereby lose his property in the wheat, but retains a property in so many bushels of the common stock as he has put in; although, by a contract between the parties, the person delivering it is to receive a certain quantity of flour for a certain number of bushels of wheat." *Gregory v. Stryker*, 2 Denio (N. Y.) 628, and authorities there cited; *Seymour v. Brown*, 19 John. 44; *Downer v. Rowell*, 22 Vt. 347; *Arthur v. Railroad*, 61 Iowa, 648; *Lyon v. Lemon*, 106 Ind. 567; *Dole v. Olmstead*, 36 Ill. 150; 41 Ill. 344; *Broadwell v. Howard*, 77 Ill. 305; *Young v. Miles*, 20 Wis. 615; 14 Allen, 376; 99 Ind. 395; 18 N. Y. 363; 4 N. Y. 76; 7 N. Y. 433. (2) Aside from the foregoing, we hold the judgment of the trial court should not be disturbed in any aspect of this transaction, be it a sale, ordinary bailment, or a tenancy in common, as we conceive it to be the well-established law in all such transactions, where there is a special agreement between the parties, that the wheat was to remain at the owner's risk; this would prevent the title from passing when deposited, and the transaction would be rather a tenancy in common, or a conditional bailment and not a sale, and certainly a party can lessen his liability by contract. 56 Me. 121; *Nelson v. Brown*, 44 Iowa, 455; 53 Iowa, 554; *Sexton v. Graham*, 53 Iowa, 183; *Ledyard v. Hibbard*, 48 Misc. 421; *Arthur v. Railroad*, 61 Iowa, 648. "Q. When did that conversation take place? A. That was just a short time after the fire. It was

when the thing was red hot, and everybody was talking about it." We think this evidence fully and amply supports the verdict and judgment of the trial judge. Our supreme court has repeatedly held that, where there is any evidence to support the verdict, or where the evidence is conflicting, this court will not disturb the finding of the trial court. *Pierce v. Chamberlain*, 82 Mo. 622; *Meyer v. McCabe*, 73 Mo. 240. (3) "Evidence of custom may properly be given to explain and give the proper effect to the contracts and acts of parties." *Inglebright v. Hammond*, 19 Ohio, 337; *Soutier v. Kellerman*, 18 Mo. 509.

SMITH, P. J.—This was an action commenced before a justice of the peace. The cause of action set forth in the first count of the plaintiff's statement is, that he sold and delivered to defendant corporation, a milling company, thirty-eight bushels of wheat for which defendant agreed to pay plaintiff in flour at the rate of twenty-nine pounds per bushel, on demand, and which defendant had refused to pay and deliver although often requested to do so. There was a second count in a similar cause of action, which was alleged to have been assigned to plaintiff.

It appears from the evidence that the defendant was engaged in the operation of a flouring mill in the village of Ashland in Boone county, and that it was, and had been for many years, its custom to receive wheat from the neighboring producers, and allow them, according to quality, so many pounds of flour per bushel, to be subsequently delivered on demand, or to pay them at their option the value of the wheat in money. It further appears that the wheat was delivered between the tenth and fifteenth of July, and a part on the first day of August, 1890, and the quantity of flour per bushel to be given in exchange therefor was

agreed upon. The wheat was deposited in what is termed the "sink," and from whence it was elevated to be ground into flour. It was mixed with other wheat placed in the "sink." The wheat was entered on the mill books to be paid for in flour.

Dr. Martin, who was president of the defendant mill company, testified that it was the custom of the mill company to have the wheat deposited with it at the loss of the party putting it there. His testimony was corroborated by a number of the customers of the mill. There was also a number of them who testified they had never heard of such custom. The plaintiff testified that he never heard of it before the transaction which gave rise to this suit. There is no pretense that there was any special agreement entered into that, if the wheat received of plaintiff should "be burned up," the defendant should be relieved of the payment therefor. The mill was burned on the fifteenth day of August following the delivery of the wheat in question. After the destruction of the mill the plaintiff demanded the quantity of the flour which the mill had agreed to deliver him for his wheat. A compliance with which was declined by defendant. There was no evidence offered tending to show that the wheat which plaintiff had placed in the sink, or that any other wheat, was there at the time of the destruction of the mill. There was some evidence tending to prove that there was at all times sufficient wheat in the mill to pay for all the flour it owed.

The court sitting as a jury declared the law to be that if the plaintiff delivered the defendant the wheat under an agreement that he should receive therefor upon demand a specific amount of flour made from wheat taken at random from wheat in the defendant's mill collected from other sources, and that plaintiff thereafter demanded the delivery of the flour, and the

defendant refused to either deliver the same or to pay the value thereof in money, then plaintiff was entitled to recover the value of the flour at the time of the demand, unless defendant had proven that there was an established, general and uniform custom that wheat so delivered and under like agreements was received by the miller, and the flour to be returned therefor pursuant to said agreement was held by him, subject to the risk of the party entitled thereto of being destroyed by fire; that the plaintiff and defendant, knowing of the custom at the time, contracted in this agreement with reference to said custom, and that the flour to which plaintiff was entitled was destroyed by fire without the fault of defendant.

The judgment was for defendant, and from which plaintiff has appealed.

The case was submitted to the court without the intervention of a jury. It becomes, therefore, important to examine the instruction of the court with the view of determining the correctness of the theory of law which it adopted in deciding the case. Was the transaction between plaintiff and defendant a bailment, sale or exchange?

If a bailment, the title to the wheat did not pass to the defendant because a contract of bailment contemplates the return of the goods bailed or growing out of the necessities of commerce, as, where grain is delivered in store, other grain of like quality and grade may be returned in its stead. Nor does the mere fact that it was mixed with a mass of like quality with the knowledge of the bailor convert that into a sale which was originally a bailment. *Lynn v. Lemon,* 106 Ind. 567; *Nelson v. Brown,* 44 Iowa, 455; *Sexton v. Abbott,* 53 Wis. 106. The agreement proved in this case shows that the defendant was subsequently, on demand, to deliver the plaintiff a certain quantity of flour for the

wheat received. So the contract proved was not that of bailment.

Whether the transaction was a sale or not depends upon whether it contained these elements: *First*, parties competent to contract; *second*, mutual consent; *third*, absolute property in the thing which was the subject of the transfer; *fourth, a price in money*. Tiedeman on Sales, sec. 1. The consideration agreed upon for the delivery of the wheat was a specific quantity of flour, and |*not a price in money*. And, therefore, the transaction was not a sale within the meaning of the rule just stated. If the contract had, as it did not, fixed the price of the wheat delivered and called for, and its payment in flour, then the transfer of the wheat would have been a sale. There being no price in money agreed upon for the wheat delivered, there was no sale.

The transaction between these parties was, properly speaking, an agreement for an exchange of goods and not for a sale. It was a commutation of goods for goods, and, therefore, an exchange and not a sale. Tiedeman on Sales, secs. 12, 150; Benjamin on Sales, 7; 1 Parsons on Contracts, 436; 2 Blackstone, 446; Chitty on Contracts [Ed. 1851] 332; *Mitchell v. Giles*, 12 Vt. 390; *Slayton v. McDonald*, 73 Me. 50; *Gunter v. Lecky*, 30 Ala. 596; *Williams v. Berry*, 8 How. (U. S.) 544. An exchange has been defined to be a reciprocal contract for the interchange of property, each party being a vendor and a vendee. Anderson's Dictionary of Law, 427; *Bixby v. Burt*, 59 Cal. 528. The distinction, however, between a sale and an exchange is rather one of shadow than of substance, for in both cases the title *is absolutely transferred*, and the same rules of law are applicable. *Commonwealth v. Clark*, 14 Gray, 372; Benjamin on Sales, 7; Tiedeman on Sales, secs. 1, 12;

*Dowling v. McKenney*, 124 Mass. 480; *Bedford v. Pegg*, 38 N. Y. 212.

The case of *Inglebright v. Hammond*, 19 Ohio, 337, cited by the defendant, is not applicable to the present case. There the miller agreed out of every four and one-half bushels of wheat furnished by Hammond to manufacture for him one barrel of flour, for which he was to charge thirty-three and one-third cents. The wheat was furnished to the miller under the agreement without objection by Hammond, mingled in the vat with his own; while the wheat was thus mingled, the miller absconded. Hammond caused an employe of the miller's to manufacture fifty barrels of flour out of the mass of wheat in the mill with which his was mingled, and this flour was seized under execution by the miller's creditors. It was held that the mingling of the wheat by consent of the owners did not have the effect to divest them of the title to their proportionate part of the mass, or, in other words, that each party retained the property in quantity equal to what he put into the common stock. The contract was neither that of sale, barter or exchange, and, hence, is distinguishable from the case at bar. It is quite true that, after the grain got mingled with that of the miller, the court, to uphold and protect the rights of Hammond, applied the principle of the elevator and warehouse cases. *Dole v. Olmstead*, 36 Ill. 150, and other cases cited in note 4 to section 7 in Tiedeman on Sales.

Turning to the instruction in this case, and it will be observed that so much of it as declares the transaction between plaintiff and defendant had the effect to transfer the title of the wheat to the defendant was perhaps well enough; but not so, that part of it which declared that if there was "*an established, general and uniform custom that wheat so delivered as aforesaid and under like agreements was received by the miller, and the*

*flour to be returned therefor pursuant to said agreement was held by him subject to the risk of the party entitled thereto of being destroyed by fire,* and that plaintiff and defendant knew the custom and contracted with reference to it,'' etc. This part of the instruction is obnoxious to the objection that there is not the semblance of evidence of any custom among millers generally, or of the defendant's mill, that the *flour* which the miller was to give in exchange for the wheat received was subject to the risk of the person entitled thereto. The flour due the depositor of the wheat was not within the custom proved. '' Customs and usages must be construed strictly—nay, very strictly—even stricter than any act of parliament that alters the common law.'' Lawson on Usages & Customs, 108.

But there is another objection to this part of the instruction just quoted, which is that if the transaction between the plaintiff and defendant was an exchange or transmutation of commodities, then as we have seen the title to the wheat passed to the defendant, and no custom could have the effect of so qualifying or limiting the defendant's ownership of it that the title would not be in him if destroyed by fire; but if not it would be. This would vary the general and well-settled rule of law, which custom cannot accomplish. *Ober v. Carson,* 62 Mo. 209; 19 Ohio, 337, *supra.*

And, besides this, it is apparent that such a custom would be unreasonable, and would lead to the most absurd consequences, and for that reason it cannot be enforced in a court of justice even if proved. Parties cannot be held to have entered into a contract with reference to it, and; especially so, when unknown to the party seeking to avoid it. Lawson on Customs, secs. 35, 36, 37.

It is a further rule that a person entering into a contract is not bound by the usage of a particular business,

unless it is so general as to furnish a presumption of knowledge, or it is proved that he was acquainted with it. *Stevens v. Reeves*, 9 Pick. 198; *Hyde v. Book & News Co.*, 32 Mo. App. 298; *Brown v. Strimple*, 21 Mo. App. 238; *Walsh v. Trans. Co.*, 52 Mo. 434. The proof does not bring this case within that rule.

The evidence does not show that the wheat which defendant received of the plaintiff was in the mill at the time of its destruction. The plaintiff had neither wheat nor flour in the mill at that time. He was entitled by the terms of the exchange to so many pounds of flour when demanded. The flour had not been demanded, weighed out, and set aside for the plaintiff. The defendant was only bound by its contract to deliver so much flour on demand. If it refused, it was liable in damages for the value of the flour at the time of demand. The latter part of the instruction was improper, and, hence, the theory of law upon which the court proceeded was erroneous.

The judgment of the circuit court will be reversed, and cause remanded with directions to enter judgment for the plaintiff for the sum of $29.37 with six per cent. thereon from the date of the commencement of the suit. All concur.