O'Neal v. Stone.

A. J. O'NEAL, Respondent, v. R. C. STONE, Appellant.

### St. Louis Court of Appeals, March 7, 1899.

Bailment: SALE: OPTION. The term bailment implies that the owner of property has placed it in the hands of another, who is, at some time, to redeliver it to the owner in its integrity or in an altered form agreed upon; if, however, the person to whom the property is delivered has the option to pay for it in money, or in some other property, or to restore it, such option is inconsistent with the character of bailment, and the transaction is in law a sale regardless of what the parties to the transaction may have called it, or thought it to be.

*Appeal from the Greene Circuit Court.*—HON. JAMES T. NEVILLE, Judge.

AFFIRMED.

HUBBARD & RAGSDALE for respondent.

The transactions were sales or exchanges of goods and not bailments. When a miller receives wheat from a farmer, for which he agrees to deliver flour and bran on demand it is an exchange or sale, and the title of the wheat passes to the miller at the time of its delivery. The farmer has neither wheat nor flour and bran in the mill until he demands it, but simply a right to demand and receive flour and bran. Lawson on Bailments, 1895, sec. 8, pp. 18 to 23; Benjamin on Sales [6 Am. Ed.], p. 6, n. 6, to sec. 4; 1 Bech. Law of Modern Contracts, p. 905, par. 746; Martin v. Milling Co., 49 Mo. App. 23. The transaction passed the title or property in the wheat to appellant Stone whether regarded as sales or exchanges. Martin v. Milling Co., Ibid. 29, Commonwealth v. Clark, 14 Gray 372; Benjamin on Sales, 7; Tiedeman on Sales, secs. 1, 12; Dowling v. McKenney, 124 Mass. 480; Bedford v. Pegg, 38 N. Y. 212.

A. W. LYON for appellant.

The transaction was a conditional bailment and created a tenancy in common. The principle involved is that of the

warehouse and elevator cases. Where a warehouseman receives grain to be stored for the owner, and places it in a common bin with his own and that received from other depositors, and sells from this receptacle, retaining always, sufficient to supply each owner, the contract continues one of bailment, and the warehouseman is not liable for a loss resulting from an accidental fire not attributable to his wrong or negligence. Drudge v. Leiter, N. E. Rep. 49, 34; Rice v. Nixon, 97 Ind. 97; Schneider v. Westover, 99 Ind. 395. A contract, clauses of which are inconsistent, must be construed according to the subject-matter and the intent. The intention of the parties as gathered from the whole writing must prevail over the strictness of the letter. Bent v. Alexander, 15 Mo. App. 181; Belch v. Miller, 32 Mo. App. 387. The circumstances under which the contract is made may be looked to in aid of its construction. Dobbins v. Edwards, 18 Mo. App. 307. A contract which is not precise in its terms must be construed in the light of the facts and circumstances surrounding the subject-matter it embraces. Crawford v. Elliott, 78 Mo. 497. Parties to a contract will be held by their own interpretation of it as shown by their subsequent acts and dealings with reference thereto. Deitmann v. Kilpatrick, 46 Mo. App. 624; Ridge v. Transfer Co., 56 Mo. App. 133; Sedalia Brew. Co. v. Sedalia Water Works Co., 34 Mo. App. 49; Goldman v. Wolf, 6 Mo. App. 490.

BLAND, P. J.—In September, 1894, and for several years prior thereto, defendant R. C. Stone, owned and operated a flouring mill at Republic, Greene county, Missouri. Connected with the mill there was an elevator, in which all wheat purchased by Stone to be ground and received by him on deposit was commingled in this elevator and the general bulk was drawn upon to supply the mill when in operation. On September 30, 1894, the mill and elevator with their contents were totally destroyed by fire, or so damaged as to be worthless. According to the preponderance of the evidence there was at

O'Neal v. Stone.

the time of the fire in the elevator from six thousand to eight thousand bushels of wheat, and from three thousand to three thousand, five hundred barrels of flour in the storage room of the mill. A. J. O'Neal, T. B. Wallace, H. H. O'Bryant, J. A. Montgomery, W. S. Phelps, J. W. Brittain, F. Rose, Joseph Pearce, and Horner Noe, were farmers in the vicinity of Republic. In the summer of 1894, O'Neal, Wallace, O'Bryant, Phelps, Montgomery, Pearce and Noe, each made a deposit of wheat with the defendant, and each received from the defendant, on account of said deposit, a written memorandum or receipt, all in the same form and varying only as to date, the amount of wheat deposited, the amount of flour and bran to be delivered and the amounts that had been delivered. The receipts or memorandums were on card board, folded in the center so as to appear in book form. On their backs were the following printed indorsement:

"Owners assume all risk by fire.

"NOTICE.

"No flour or bran paid on this deposit account unless presented at the office of the Republic Roller Mills, at the time of delivery. R. C. Stone, Proprietor."

On the inside (taking Wallace's receipt as a sample) was the following in print, with blanks for name of depositor, quantities of wheat deposited and of flour and bran to be delivered and dates of deliveries made, to wit:

"Page.... DEPOSIT ACCOUNT. No......
"Office of R. C. Stone, Proprietor of Republic Roller Mills.
"Republic, Mo., Aug. 3d, 1894.

"Mr. T. B. Wallace has deposited with Republic Roller Mills, 60 bushels of wheat, test 60 pounds, and is to receive for same 1,700 pounds of patent flour and 600 pounds of bran.

| Month. | Day. | Rec'd Flour. | Bal. Due. |
|--------|------|--------------|-----------|
| Aug. | 23, | 200 | 1,500 |
| Sept. | 29, | 200 | 1,300 |

Horner Hoe, a witness, testified that he had received a like certificate from defendant, but had delivered it to a Mr. Camp to look after for him and had been unable to recover it from Camp; he claimed that there was due to him on his receipt or deposit account nine hundred and forty-two pounds of flour. J. W. Brittain and F. Rose were also farmers residing in the vicinity of Republic. On July 17, 1894, Brittain made a deposit of wheat with defendant and received the following certificate:

"This certificate that J. W. Brittain has this 17th day of July deposited 243 bushels and nine pounds of wheat in the warehouse of R. C. Stone, at Republic, Mo. Said wheat testing 60 pounds per bushel, grade No. 2. Said J. W. Brittain agrees to pay 1-2 cent per bushel per month or each fraction of a month for storage, and further agrees to assume all damage by fire lightning, tornado and all causes unavoidable by said R. C. Stone. Said wheat to be delivered to J. W. Brittain at said warehouse on demand, less five pounds per bushel shrinkage for every month or fraction of a month such wheat has been in warehouse. Should said Stone at the time of said demand not have the amount of wheat equal in grade to the amount received, then he is to have the privilege of substituting an amount of equal value of a grade next above or below the grade received. The market price at time of demand governing. Said Stone is also to have the privilege of buying said wheat at the market price at the time of demand." Received payment in full of R. C. Stone less shrinkage and the grade received. The market price at time of demand on deposit.          Signed.      R. C. Stone,
                                        "Per E. W. R."

On the eighteenth day of the same month Rose deposited four hundred and twenty-five bushels of wheat with defendant and received a certificate like that of Brittain's. On the back of Rose's certificate payments of two hundred and twenty-five

O'Neal v. Stone.

bushels of wheat was indorsed. Rose also claimed a balance on account of $8.65, as balance on account of fifty-six bushels of wheat sold defendant. After the destruction of his mill by fire the defendant refused to deliver flour, bran or wheat on any of these receipts and denied all liability thereon. To avoid a multiplicity of suits and for the purpose of collection only, each of the other holders of these receipts assigned his receipt to the plaintiff, who brought suit on his own receipt and the assigned ones, making a separate count of each claim. The issues were submitted to the court sitting as a jury, who after hearing all the evidence found for the plaintiff and gave him judgment on all ten of the counts in his petition. From this judgment defendant duly appealed.

The evidence is that all the holders of the receipts other than Brittain and Rose deposited what they call their bread wheat with the defendant, with the understanding that they should have the amount of flour specified in their respective receipts from time to time as they should need it and whenever they should call for it. No declarations of law were asked or given on the part of the plaintiff. The defendant asked numerous instructions, all of which but one were refused, and that one given only in modified form. From this action of the court we are reasonably informed that the court found from the evidence that the deposits of wheat made by the plaintiff and his assignors were in fact sales and not bailments. The great oracle of the law on bailments, Sir William Jones, at sections 105 and 106 of Jones on Bailments, points out the distinction between a sale of goods and a bailment in this wise: "If the goods delivered are to be returned, although in a changed form it is a bailment, but if the intention is that either money or other goods are to be received in exchange for them, there is a transmutation of property and the obligation created is a debt and not a bailment. An apt illustration of this distinction is found in Norton v. Woodruff, 2 N. Y. 153 and Mallroy v. Willis, 4 Id. 76. Both decided by the same court. In the

first case a miller agreed to take certain wheat and to give one barrel of superfine flour for every 4 36-60 bushels thereof, the flour to be delivered at a fixed time, or as much sooner as the miller could make it.   As the miller's contract was satisfied by a delivery of flour from any wheat, the transaction was held to be a sale; in the latter case wheat was delivered under a contract to be manufactured into flour and one barrel of flour was to be delivered for every 4 15-60 bushels of wheat; this was held to be a bailment.   In Andrews v. Richmond, 34 Hun. 20, it was held that when by the contract there is no obligation to restore the specific article and the bailee is at liberty to return another of equal value he becomes a debtor under obligation to make return in kind, the title to the property changes and the transaction is a sale.   To the same effect is the case of Austin v. Seligman, 21 Blackf. 507.   The term bailment implies that the owner of property has placed it in the hands of another who is at some time to redeliver it to the owner in its integrity or in an altered form agreed upon.   If, therefore, the person to whom the property is delivered has the option to pay for it in money or in some other property or to restore it, such option is inconsistent with the character of bailment and the transaction is in law a sale, regardless of what the parties to the transaction may have called it or thought it to be. Kaut v. Kessler, 114 Pa. St. 603; Clark v. Washburn, 1 Ohio St. 244. In Lyon v. Lenon, 106 Ind. 567, the following distinction applicable to the certificates of Rose and Brittain is made:   "If the dealer has the right at his pleasure either to ship and sell the same on his own account and pay the market price on demand or retain and deliver the wheat or other wheat in the place of it the transaction is a sale.   It is only when the bailor retains the right from the beginning to elect whether he will demand the redelivery of his property or other like quality and grade that the contract will be considered one of bailment."   In Britz v. Diehl, 117 Pa. St., it is said:   "The fundamental distinction between a bailment and a sale is that in

the former the subject of the contract, although in an altered form, is to be restored to the owner, whilst in the latter there is no obligation to return the specific article; the party receiving it is at liberty to return some other thing of equal value in place of it." By the terms of the Rose and Brittain certificates Stone was not obliged to return wheat of equal quality and grade, but had the right to substitute wheat of a higher or lower grade but of equal value in a grade above or below that received. He also reserved the option of buying the wheat at the market price at the time demand for its return should be made. These privileges are wholly inconsistent with the character of a bailment; the dominion over the wheat deposited was given unreservedly to Stone and the transaction can not be regarded in any other light than as a sale.   As to the other certificates, in the light of the testimony that the wheat of the depositors was mingled with the wheat of Stone in his elevator and the bulk thus formed drawn from as occasion demanded to supply the mill, no property in the wheat was retained in the depositors, absolute dominion over it all was conferred upon Stone, and all the depositors had a right to demand according to the terms of their contract was so much flour and bran for each bushel of wheat deposited, not the flour BAILMENT: sale. and bran manufactured out of wheat deposited by them, but so much flour of a specific grade and so many pounds of bran out of any flour of the specific grade which Stone might have on hand when demand for a delivery should be made, regardless of what wheat or at whose mills the flour and bran might be manufactured.   Such a transaction can be regarded in no other light than as a sale, and is wholly inconsistent with the character of bailment. Martin v. Ashland Milling Co., 49 Mo. App. 23.   The only case to which appellant has referred in his brief that supports his contention of bailment is Seymour v. Brown, 19 Johns, 44,

where it was held that where wheat was delivered to a mill upon an agreement to receive flour in exchange at the rate of one barrel for every five bushels of wheat, the transaction was a bailment "*locatio operis faciendi* which did not change the property in the wheat so that upon its destruction before the flour was delivered the loss fell upon the bailor." Unfortunately for the appellant this case has been repeatedly overruled, expressly so in Smith v. Clark, 21 Wend. 83; see, also, Hurd v. West, 7 Cow. 752; Pierce v. Schench, 3 Hill, 28; Norton v. Woodruff and Malloroy v. Willis, *supra*. We agree with the learned circuit judge that the several transactions counted upon the plaintiff's petition were sales and not bailments, and that the loss by the fire must fall upon the defendant and not upon the depositors. Judgment affirmed. All concur.