CARPENTER *v.* RANNELS.

A. having, prior to July, 1801, an inchoate title to lands in the then French territory of what is now Missouri, agreed in July of that year to sell it, on certain conditions of improvement, required by the government, to B. On B.'s making the required improvements, the land was to " belong to him in full proprietorship," and A. bound himself, his heirs, and assigns, " to solicit title from the government, and to make a regular transfer to the said B. without any further cost on his part, except the expenses of the necessary deed." The said French territory, having

passed to the United States in 1803, and commissioners having been appointed in 1805 by act of Congress "to ascertain and adjust titles and claims" to lands within the newly acquired territory, B. appeared before the board in April, 1811, with his conditional transfer from A., and the board, as a record in their minute-book showed, "grant to A. *or his legal representatives*" the land thus claimed, and order the same to be surveyed "so as to include *his* improvements." In the June following the commissioners issued their *certificate*, in which they say, "We . . . have decided that the legal representatives of A., original claimant, are entitled to a patent," &c., for the land, "and order the same to be surveyed so as to include *his* improvements," &c. The land thus granted having been injured by earthquakes, and Congress, in February, 1815, having authorized persons whose land had been thus injured to make new locations of the same quantity of land on any of the public lands then open for sale in the same Territory, it appeared by different records that A., asserting that his land had been thus injured, claimed new land, and also that A. "*or his legal representatives*" claimed it. A patent was finally issued, reciting that in pursuance of the act of Congress of February, 1815, there had been located for A. "*or his legal representatives*" a tract described : the *habendum* of the patent being to the said A. "*or his legal representatives and to his or their heirs and assigns forever.*"

*Held*, that the title enured to B. and his legal representatives, and that no other representative of A., whether hereditary or by contract, had any right, legal or equitable, to the premises.

ERROR to the Supreme Court of the State of Missouri.

Carpenter brought ejectment against Rannels in one of the Circuit Courts of Missouri to recover possession of two hundred arpents or acres of land in the county of St. Louis, located under a New Madrid certificate of relocation, No. 511, which was issued under an act of Congress of February 17th, 1815,* and acts supplementary thereto, in lieu of lands in New Madrid County, which had been injured by earthquakes, and upon which certificate a patent issued, dated March 30th, 1833, to "John Butler *or his legal representatives.*"

The plaintiff claimed, under the confirmation and patent, directly through the heirs of this John Butler.

The defendant claimed also through the confirmation and patent to Butler, but asserted that the same had in law

---

* 3 Stat. at Large, 211.

passed the equitable title to one James Bankston, herein-
after mentioned, and whom he asserted to be the "legal
representative" of the said Butler, and he gave evidence
tending to show derivative title under Bankston.

The cause was submitted to the court without the inter-
vention of a jury. The court found and gave judgment for
the defendant, and that judgment being affirmed in the Su-
preme Court of the State,* the plaintiff brought the case
here for review.

*Mr. B. A. Hill, for the plaintiff in error ; Messrs. Glover and
Shepley, contra.*

Mr. Justice SWAYNE stated the case, and delivered the
opinion of the court.

John Butler had an inchoate title derived from the Spanish
government, acting through its authorized agents. Upon
this subject there is no controversy between the parties. It
is the common source of the derivative titles upon which
they severally rely.

On the 23d of July, 1801, Butler entered into an agree-
ment with James Bankston to the following effect:

Butler leased the land to Bankston for three years from
the date of the contract. Bankston agreed, "during the
three years, to erect on said tract all the improvements and
establishments—to break up the ground, and to make the
Royal road and other improvements required by law; to be
enabled at the end of three years from the petition for said
land to obtain the title of proprietorship from the govern-
ment of the province." Butler acknowledged the payment
of forty piasters by Bankston. On condition that Bankston,
at the end of the three years, should have made the improve-
ments stipulated for, the land was to "belong to him in full
proprietorship," and Butler bound himself, his heirs and
assigns, "to solicit the title from the government, and to
make a regular transfer of said land to the said James

* 45 Missouri, 584.

Bankston, without any further cost on his part, except the expenses of the necessary deed," and "Bankston . . . promised to fulfil and execute all the said clauses and conditions, under penalty of the forfeiture of the advantages which might result in his favor."

This instrument shows that so far as Butler was concerned the entire consideration of the transaction had been paid. What remained for Bankston to do was wholly for his own benefit, and not for Butler's. If he fulfilled, a perfect title was to be acquired from the government; not for Butler, but for himself. It was implied that the title was to emanate in Butler's name. He stipulated to apply for it and to convey it to Bankston without expense to the latter except for the necessary conveyances.

The State of Missouri is a part of a larger territory which belonged to France, then to Spain, and again to France. France ceded it to the United States in 1803. The United States stipulated that the inhabitants of the ceded territory should be protected in the free enjoyment of their property. The law of nations would have given this guaranty if the treaty had been silent upon the subject, and the result would have been the same if the territory had been acquired by conquest and not by cession. The new government took the place of that which passed away, and was clothed with the same duties and obligations as to all rights of property subsisting when the dominion of the latter was withdrawn.*

Congress, by the act of March 2d, 1805,† provided for the examination and adjustment of claims of title like the one here in question, and created a board of commissioners for that purpose. Other acts were passed relating to the subject, but it is not necessary particularly to advert to them. This title came before the commissioners in the year 1811, and the result of their action is the hinge of the controversy between these parties. The question to be determined is

---

\* Soulard *v.* United States, 4 Peters, 512; Strother *v.* Lucas, 12 Id. 436.

† 2 Stat. at Large, 824.

whether it was confirmed to Butler or to Bankston. This renders it necessary to examine that part of the record which relates to the subject. It consists of a transcript of the proceedings of the commissioners and of the evidence before them. We shall itemize as we proceed.

(1.) "John Butler claims two hundred arpents of land in the district of New Madrid, under the second section of the act of Congress made and provided."

(2.) An order, dated April 16th, 1801, from Peyroux to Story, to survey two hundred arpents of land for Butler. This was before the date of the contract between Butler and Bankston.

(3.) A plat of the survey made by Story and a certificate by him that he made it at the request of Butler, who claimed the land by virtue of a grant from Peyroux while commandant of the district of New Madrid, and in virtue of the second section of the act of March 2d, 1805. This certificate is dated February 2d, 1806.

(4.) The contract between Butler and Bankston already adverted to.

(5.) "*Friday, April* 12*th*, 1811.—Board met: Present, John B. C. Lucas, Clement B. Penrose, and Frederick Bates, commissioners.

"James Bankston, assignee of John Butler, claiming two hundred arpents of land, situate in Cypress Swamp, district of New Madrid, produced to the board an order of survey dated 16th April, 1801, a certified copy of a conditional transfer from Butler to claimant, dated 23d July, 1801, and a plat of survey dated 2d February, 1806.

"The board grant to John Butler, *or his legal representatives*, two hundred arpents of land, and order that the same be surveyed as nearly in a square as may be, and so as to include his improvements.

"Board adjourned till Monday next, nine o'clock A.M." Signed by the commissioners. "See Board Minute-Book, No. 5, pages 145, 148, and 149."

(6.) "*Thursday, June* 20*th*, 1811.—Board met: Present, Clement B. Penrose, Frederick Bates, commissioners. John

B. C. Lucas, commissioner, appeared at the board and took his seat.

" Cert. No. 1103, *John Butler's legal representatives,* Book 5, page 148.

" Survey at expense of the United States. Board adjourned till to-morrow, eight o'clock A.M." Signed by the commissioners. " See Board Minute-Book, No. 5, page 187, 188, and 193."

(7.) " *Louisiana Commissioners' Certificate No.* 1103, *June 20th,* 1811.

" We, the undersigned, commissioners for ascertaining and adjusting the titles and claims to lands in the Territory of Louisiana, have decided *that the legal representatives of John Butler,* original claimant, are entitled to a patent under the provisions of the second section of an act of Congress of the United States, entitled ' An act for ascertaining and adjusting the titles and claims to land within the Territory of Orleans, and the District of Louisiana, passed the 2d day of March, one thousand eight hundred and five,' for two hundred arpents of land, situate in the district of New Madrid, Cypress Swamp, and order that the same be surveyed as nearly in a square as may be, and so as to include *his* improvements, by virtue of a permission from the proper Spanish officer, and also of actual inhabitation and cultivation prior to, and on, the 20th day of December, one thousand eight hundred and three." Signed by the commissioners. " See certificate on file."

So far as the name of Butler appears in these documents, as the claimant, it is to be borne in mind that he was bound by his contract with Bankston to procure the emanation of the final title for the benefit of the latter. It is shown that Bankston produced to the commissioners a copy of his contract with Butler; that the board granted to Butler, *or his legal representatives,* the land claimed; that it was ordered to be surveyed in the name of " John Butler's legal representatives;" that there were improvements made by permission of the proper Spanish officer, and " actual inhabitation and

cultivation on and prior to the 20th of December, 1803;" and finally, that the board " decided that the *legal representatives* of John Butler, original claimant, are entitled to a patent under the second section of the act of March 2d, 1805." There is no evidence that Butler or any one else questioned the claim of Baukston before the commissioners.

The act of Congress of February 17th, 1815,* declared that any person owning lands in the county of New Madrid, in Missouri Territory, which land had been injured by earthquakes, might "locate the like quantity of land on any of the public lands of said Territory the sale of which is authorized by law." In the event of such location being made, the title of the owner to the lands injured was to revert to the United States. In the proceedings under this act the following testimony is found in the record:

(1.) A, a line in a tabulated statement, showing that Butler claimed that the land in question was injured, and had relinquished the title to the United States.

(2.) A, in line in a like statement that Butler was the claimant, and that a certificate of injury had been delivered to James Evans.

(3.) A, a line in a like statement that Butler, or his legal representatives, claimed, and that a patent certificate was prepared accordingly by the recorder of land titles under the act of 1815 and the supplementary acts, and that it was delivered to William Smith, of St. Louis.

The only other testimony in the record necessary to be adverted to is:

(1.) A power of attorney from Butler to James Evans, dated February 9th, 1819, authorizing him, as the attorney of Butler, to sell " a certificate of location for two hundred arpents obtained from the recorder of land titles for the Territory of Missouri, or to locate the same as he should think proper."

(2.) A deed from Evans, as such attorney, dated January 1st, 1819, whereby he assigned the certificate to Henry

---

* 3 Stat. at Large, 211.

Waddle. It is described as "a New Madrid certificate, issued by Frederick Bates, recorder of land titles for the Territory of Missouri, No. 511, dated December 31st, 1818, whereby it is certified, among other things, that John Butler, or his legal representatives, is entitled to locate two hundred arpents of land."

(3.) A patent from the United States to John Butler, or his legal representatives, dated March 30th, 1863. It recites that, in pursuance of the act of February 17th, 1815, there had been located "for John Butler, or his legal representatives, a certain tract of land, described," &c. A full description is then given. The *habendum* is, "to the said John Butler, or his legal representatives, and to his or their heirs and assigns forever."

This is the land in controversy in this case.

In the opinion of the court in *Hogan* v. *Page*,* it is said that at an early period there was difficulty as to the form of patent certificates and of patents, arising out of applications to have them issued in the name of the assignee or present claimant, thus imposing upon the office the burden of deciding as to the validity of the derivative title. The same difficulty, it is said, existed in respect to the boards of commissioners appointed to adjust French and Spanish claims. The result, after consulting the Attorney-General, was that the Commissioner of the Land Office recommended that in such cases the patent certificate or the patent should be issued to the original *grantee, or his legal representatives,* and that this suggestion was adopted by the several boards of commissioners. It is added: "This formula, '*or his legal representatives,*' embraces the representatives of the original grantee of the land by contract, such as assignees or grantees, as well as by operation of law, and leaves the question open to inquiry in a court of justice as to whom the certificate, patent, or confirmation should enure."

This is decisive of the case before us. There it was argued

---

* 2 Wallace, 607.

that " the confirmation to the representatives of Auguste Condé" enured to his heirs. In the case before us, Butler was living at the time of the confirmation. He and Bankston were before the commissioners. Bankston produced his contract. It does not appear that Butler made any objection to his claim, and the commissioners adjudged in his favor. The omission of Butler's name in the patent certificate, under the circumstances, closed the door finally against any claim thereafter on his part touching the property by virtue of his original title. The commissioners must have found that Bankston had done all that he was bound to do by his contract. An act done by a public officer which presupposes another act is presumptive proof of the latter.*

The certificate issued by the recorder of land titles under the act of 1815, the location of that certificate and the patent, enured to Bankston and his legal representatives.† No other representative of Butler, whether hereditary or by contract, has any right, legal or equitable, to the premises. The testimony in the record is conclusive upon the subject.

JUDGMENT AFFIRMED.

---

* Bank of the United States *v.* Dandridge, 12 Wheaton, 70; Lessee of Ward *v* Barrows, 2 Ohio State, 242.

† Bissell *v* Penrose, 8 Howard, 338; Hogan *v.* Page, 2 Wallace, 605; Papin *v.* Massey, 27 Missouri, 445; Boone *v.* Moore, 14 Id. 420; Carpenter *v.* Rannells, 45 Id. 591; Page *v.* Hill, 11 Id. 149.