[L. A. No. 366.   Department Two.—May 31, 1898.]

J. WADE McDONALD, Respondent, v. WINNIFRED McCOY, as Executrix, etc., et al., Defendants.   ELLEN DORE and CHARLOTTE E. DORE as Administratrixes of the Estate of Maurice Dore, Deceased, Appellants.

Mexican Grant—Contract of Sale by Another—Ratification—Transfer of Title.—Where lands held under Mexican grant prior to a petition for the confirmation were sold by another person than the grantee, who executed a contract in his own name, assuming, as party of the first part, to sell the title of the Mexican grantee for a specified price, a certain sum to be paid in cash, and a like sum to be paid when such grantee should deliver to the purchasers a deed in fee simple, which it was agreed should be delivered by a certain date, and further agreeing that if such grantee should refuse to ratify the agree-

ment or to deliver the deed, then the party of the first part should refund the cash payment, and pay all damages resulting from dispossession of the purchasers, for which he bound himself, his heirs, executors, or administrators, such contract, not purporting to be the contract of the Mexican grantee, was not capable of being ratified by him as a contract; and where he had rendered himself incapable of delivering a fee simple title to the purchasers by a previous transfer of his title to another person, a subsequently attempted ratification by him of the contract was wholly futile.

ID.—CONFIRMATION OF GRANT—PATENT—CLAIM OF DECEASED HUSBAND—DEED TO WIDOW—RIGHTS OF HEIRS—ESTOPPEL.—Where a husband succeeded to the possession of the lands under such contract of sale, and his second wife, after his death, purchased the title and took a deed from the Mexican grantee to herself for the sole benefit of herself and her heirs, exclusive of the heirs of the husband under a former marriage, and sought for confirmation of the grant to herself and her two children, and filed affidavits showing the claims of her husband, and that the contract had not been ratified by the Mexican grantee to the purchaser under such contract, though he never objected to the possession of her husband, and that since the husband's death he had ratified it in favor of herself and children by said deed, and obtained an order reciting that her husband was the real claimant, and that while prosecuting the claim in the name of the original grantee he lost his life in the Civil War, and granting a hearing in favor of his widow and children, "who were his sole heirs," and obtained a subsequent order confirming the claims of herself and her two children "as the legal representatives" of the deceased husband, and a patent issued to them by name, described as "widow and heirs" of the deceased husband, "and to their heirs and assigns forever," the widow is not estopped by the facts to claim under the title acquired by deed from the Mexican grantee to the exclusion of the other heirs of her deceased husband.

ID.—CLAIM OF HUSBAND NOT ADJUDICATED—TITLE INURING TO SUCCESSORS OF MEXICAN GRANTEE.—The description in the order of court of the deceased husband as the real claimant was not an adjudication of that fact; and the court had no occasion to determine who were the legal representatives either of the deceased husband or of the Mexican grantee; but, whoever received the patent, the title would inure to those who in fact derived title as successors of the Mexican grantee subsequently to the filing of the petition for confirmation of the grant.

ID.—RELATION OF PATENT TO PETITION.—The patent issued to the confirmee of a Mexican grant takes effect as a deed of the United States by relation, at the date of the presentation of the petition for confirmation, and inures to the benefit of subsequent grantees and mortgagees lawfully claiming under the grantee or confirmee.

ID.—QUITCLAIM MORTGAGE FROM CONFIRMEES.—The fact that a mortgage executed by the confirmees of the grant prior to the patent was a quitclaim, and would not carry an after-acquired title, is immaterial,

as the title acquired by the patent antedates such mortgage by relation, and inures to the benefit of such mortgagee.

ID.—DETERMINATION OF HEIRSHIP—RECITALS IN ORDER AND DECREE—JURISDICTION OF DISTRICT COURT.—It was not the province of the district court to determine who were the heirs of the deceased husband, or whether the title to the property accrued to the parties named by inheritance or otherwise; and the recitals in the orders and decree of confirmation in regard to that matter bind no one, and are not evidence of the facts recited even as against the parties to the judgment.

ID.—CONSTRUCTION OF PATENT—ABSOLUTE TITLE.—The patent to the persons named, described as "widow and heirs" of the deceased husband, is not to the heirs of the decedent, but to the persons named, and, being to "their heirs and assigns," it indicates that they held for themselves, as tenants in common owning equally, and not as heirs of the decedent, and on its face shows an absolute title in the persons named, not subject to any trust in favor of anyone.

ID.—RES ADJUDICATA—JUDGMENT QUIETING TITLE—MORTGAGEE NOT A PARTY. A judgment rendered in an action to quiet title brought by the administrator of the deceased husband against the purchasers under foreclosure of a mortgage given by the widow and her two children, quieting the title of the administrator as against such purchasers, does not bind a mortgagee to whom, through his agent, another mortgage was given by the purchasers to secure the purchase money, where such mortgage was of record before the commencement of the action, and neither the mortgagee nor his agent was made a party thereto, nor appeared or participated therein.

ID.—ACTION TO QUIET TITLE—PROCEEDING IN REM—CONCLUSIVENESS OF JUDGMENT.—An action to quiet title is not, in the full sense, a proceeding in rem; but so far only that personal service of process is not required to give jurisdiction; and the judgment in such an action is conclusive only upon the parties and their privies in estate, and the effect of the judgment as an estoppel is declared in section 1908 of the Code of Civil Procedure.

ID.—DECISION UPON FORMER APPEAL—LAW OF CASE—DIFFERENT FACTS.— A decision rendered upon a former appeal is not the law of the case where the facts are substantially different; nor can such decision be regarded as an authority upon a different state of facts to which other decisions are applicable.

ID.—CONTRACT ANTEDATING PETITION FOR CONFIRMATION—EQUITY—TRUST— QUIETING TITLE—PLEADING.—Rights asserted under the contract claimed to have been made by plaintiff's predecessors with the Mexican grantee prior to the presentation of the petition for its confirmation are not protected by any legal relation of the patent, and can only be enforced in equity; and where the plaintiff in an action to quiet title has averred a legal title, and asked to have it so adjudged, he cannot in such action have it adjudged that he has an equitable title under such contract and that defendants hold the legal title in trust for him.

ID.—ACTION TO DETERMINE HEIRSHIP—CONCLUSIVENESS OF JUDGMENT.—The judgment rendered in an action brought under section 1664 of the Code of Civil Procedure to determine the heirship to the estate of the deceased husband, to which the successor in interest of the widow and her heirs claiming adversely to the estate was made a party but did not appear therein, does not conclude such person or his heirs in a subsequent action to determine adverse claims to the property.

ID.—ADVERSE POSSESSION OF ADMINISTRATOR—MORTGAGEES WITHOUT DEED—SALES FOR DELINQUENT TAXES.—The possession of the administrator of the deceased husband could not confer a title by prescription as against mortgagees claiming under the patent to the widow and her heirs, where it appears that such mortgagees had not been able to secure the legal title under foreclosure, and had no right of action to recover the property, and that the administrator neglected to pay the taxes assessed annually upon the property, and allowed it to be sold to the state for delinquent taxes. He could not hold adversely during the years in which such sales for delinquent taxes were allowed, regardless of whether the property was redeemed from the state while he continued in possession or not.

.APPEAL from a judgment of the Superior Court of San Diego County and from an order denying a new trial. E. S. Torrance, Judge.

The facts are stated in the opinion of the court.

Nougues & Boone, and W. McNealy, for Appellants.

The title to the ranch became vested in Mrs. Burton and her children by the order of confirmation and patent. (*Bonds v. Hickman*, 32 Cal. 205; *Hartley v. Brown*, 46 Cal. 202; 51 Cal. 465; *Christy v. Fisher*, 58 Cal. 256; *McDonald v. Burton*, 68 Cal. 453; *Leese v. Clark*, 18 Cal. 535; 20 Cal. 387.) The patent took effect by relation to the petition for confirmation, and inured to the benefit of a prior grantee or mortgagee, though holding under a quitclaim. (*Touchard v. Crow*, 20 Cal. 150; 81 Am. Dec. 108; *Leese v. Clark, supra*; *Morrill v. Chapman*, 35 Cal. 85; *Crane v. Salmon*, 41 Cal. 63; *Wholey v. Cavanaugh*, 88 Cal. 132; *Hogan v. Page*, 2 Wall. 605; *Warnecke v. Lembca*, 71 Ill. 92; 22 Am. Rep. 85.) The judgment in the action of *Burton v. Burton*, 79 Cal. 492, did not vest legal title in the estate of Henry S. Burton, deceased. It operated *in versonam* and not *in rem*. (3 Pomeroy's Equity Jurisprudence, sec. 1317; *Harrigan v. Mowry*, 84 Cal. 456; *Von Drachenfels v.*

*Doolittle*, 77 Cal. 295, 296; *Schlessinger v. Mallard*, 70 Cal. 326, 327.)   A mortgagee whose mortgage is not recorded, and who is not a party, is not bound by the decree.   (*Campbell v. Hall*, 16 N. Y. 575; *Brady v. Burke*, 90 Cal. 6.)   The judgment in the suit to determine heirship of the estate of Henry S. Burton, deceased, is not conclusive in an action to determine adverse claims.   (Code Civ. Proc., sec. 1664; *Estate of Burton*, 93 Cal. 459, 465; *In re Burdick*, 112 Cal. 387; *In re De Leon*, 102 Cal. 537, 541.)   Plaintiff acquired no title by adverse possession, the mortgagee having no right of action to recover the property.   (*Leonard v. Flynn*, 89 Cal. 542; 23 Am. St. Rep. 500.) The failure to pay the taxes assessed annually and allowing the property to go to sale destroyed adverse possession.   (Code Civ. Proc., sec. 325; *Iberg v. Webb*, 96 Ill. 415; *Fell v. Cessford*, 26 Ill. 522; *Jayne v. Gregg*, 42 Ill. 416.)   Plaintiff having alleged a legal title, cannot enforce an equitable title, but the legal title must control.   (*Estrada v. Murphy*, 19 Cal. 272, 273; *Hartley v. Brown, supra; Von Drachenfels v. Doolittle, supra; Ha rigan v. Mowry, supra; Frost v. Spitley*, 121 U. S. 552.)

McDonald & McDonald, for Respondent.

The decree quieting title to the property in the Burton estate was conclusive that the title was held in trust for the estate. (*McDonald v. Burton*, 68 Cal. 446-53; *Burton v. Burton*, 79 Cal. 492.)   Maurice Dore was chargeable with notice of all the proceedings upon which the order of confirmation was based.   (Devlin on Deeds, sec. 1020; Wade on Notice, secs. 324-26; *Vance v. Fore*, 24 Cal. 436-44; *Montgomery v. Keppel*, 75 Cal. 128-31, 7 Am. St. Rep. 125; *McDonald v. Burton, supra.*)   The mortgage which is the foundation of defendant's claim was taken with full knowledge of the claim of the estate to the property, and was subject to the administrator's sale and deed.   (*Cook v. De La Guerre*, 24 Cal. 238, 241, 242; *McCauley v. Harvey*, 49 Cal. 497, 505, 506; *Estate of Moore*, 57 Cal. 437-42; *Wood v. Curran*, 99 Cal. 137-41; *Phelan v. Smith*, 100 Cal. 158, 164, 165.) The patent not having issued, Dore was not protected as a *bona fide* holder.   (*Montgomery v. Keppel*, 75 Cal. 128-30; 7 Am. St. Rep. 125; *Taylor v. Weston*, 77 Cal. 534-37.)

Rodgers, Paterson & Slack, also for Respondents.

The distinction between an equitable and legal title is without substance. (*Watson v. Sutro*, 86 Cal. 527; *Tuffree v. Polhemus*, 108 Cal. 670.) At the date of the mortgage in question here the title was subject to the administration of the estate of Henry S. Burton, deceased. (*McDonald v. Burton*, 68 Cal. 446; *Soye v. McCallister*, 18 Tex. 80; 67 Am. Dec. 689; *Burton v. Burton*, 79 Cal. 492, 494; *Cook v. De La Guerra*, 24 Cal. 237; *Wood v. Curran*, 99 Cal. 137; *Estate of Moore*, 57 Cal. 437; *Brenham v. Story*, 39 Cal. 179; *Phelan v. Smith*, 100 Cal. 158.) The decree in *Burton v. Burton, supra*, divested Leach and Capron of the legal title, their mortgagee not being a necessary party defendant. (*Snodgrass v. Parks*, 79 Cal. 55; *De Peralta v. Simon*, 5 Cal. 313.) The patentee held the legal title in trust for all the heirs of Henry S. Burton, deceased. (*O'Connell v. Dougherty*, 32 Cal. 461; *Clark v. Lockwood*, 21 Cal. 220; *Estrada v. Murphy*, 19 Cal. 248; *McDonald v. Burton, supra; Soye v. McCallister, supra; Sherman v. McCarthy*, 57 Cal. 507; *Wilson v. Castro*, 31 Cal. 421.) The mortgagees were chargeable with notice of the representative capacity in which the decree of confirmation and patent were obtained. (*Graff v. Castleman*, 5 Rand. 195; 16 Am. Dec. 741; *Reeder v. Barr*, 4 Ohio, 446; 22 Am. Dec. 762; *Baker v. Mather*, 25 Mich. 51; *Brush v. Ware*, 15 Pet. 93.) Mrs. Burton was concluded by the decree of confirmation obtained upon her representations in regard to the rights of the deceased husband. (*Davis v. Wakelee*, 156 U. S. 680; *Philadelphia etc. Ry. Co. v. Howard*, 13 How. 307.) This decree was final between the parties, and all persons claiming under them subsequent to the rendition of the decree. (See *More v. Steinbach*, 127 U. S. 70; *Boyle v. Hinds*, 2 Saw. 527; *Bouldin v. Phelps*, 30 Fed. Rep. 547, 578.)

TEMPLE, J.—This action was brought to quiet title against several defendants, but no defense is made except by the representatives of Maurice Dore, deceased, who are the appellants.

The plaintiff, in his complaint, avers that he is the owner and in possession of the land in question, and yet the defendants assert title thereto and slander and deny the right and title of the plaintiff therein, and by such assertion of their alleged

rights, and slander and denial of the right and title of the plaintiff, the defendants have created doubts and thrown suspicion upon plaintiff's title. He demands judgment that his title is good and paramount to the title and claim of defendants, and each of them.

Appellants deny plaintiff's allegation of title, allege title in Dore, and assert certain equities.

The controversy involves the Rancho Jamul, in San Diego county, except a portion thereof which had been set apart to Mrs. Burton as a homestead. In 1831 a provisional grant was made to Pio Pico. In January, 1851, Juan Forster, in his own name, as party of the first part, contracted with Lopez, Crossthwaite, Richard Rust, and William E. Rust, as parties of the second part, to sell to them the right, title, and interest of Pio Pico in the Rancho Jamul for two thousand dollars, to be paid to Juan Forster, "agent as aforesaid." Five hundred dollars was to be paid in cash and a like sum when Pico should deliver to them a deed in fee simple, and also some further sums, but if Pico should refuse to ratify the agreement on the part of Forster or to deliver the deed, then Forster agreed to pay to the parties of the second part five hundred dollars so advanced by them and all damages resulting from their being dispossessed, and for the true and faithful performance of this last covenant Forster bound himself, his heirs, executors, and administrators. The deed of Pico by the terms of the agreement was to be delivered to the parties of the second part on or before the 1st of March, 1851. It never was delivered and it does not appear that anything was ever done in performance of the contract by anyone.

In October, 1852, a petition in the name of Pico was filed in the United States land commission, asking for a confirmation of the title. The claim was rejected by the commissioners in 1855. According to an affidavit made by Maria S. Burton, and filed in the United States district court in 1880, Burton in 1853 purchased the right of Lopez and Crossthwaite under the contract and took possession of the land; and in 1854 he purchased the interests of Richard and William E. Rust.

In 1867, nearly twelve years after the claim had been rejected, an appearance was entered in the United States district court on behalf of General Burton. For what purpose does not appear.

Burton left the state in 1859 and never returned. He was an officer in the army of the United States during the Civil War, and, according to the affidavit of Mrs. Burton, from the hardships and exposures in that service he contracted a disease from which he died at Fort Adams in 1869.

June 24, 1870, Mrs. Burton purchased the land from Pico and took his deed to herself—not as a ratification of the sale made by Forster, but to rebut the possibility of any such presumption it was recited in the deed to her from Pico as follows: "To have and to hold unto her, the said Maria S. Burton, her heirs and assigns forever, to and for their benefit and none other."

On the twenty-third day of August, nearly three months after the deed from Pico to her, Mrs. Burton made the affidavit, in which there was evidently an attempt to excuse the failure to prosecute the claim by showing that General Burton was the real claimant, and that no laches could be charged to him because he was engaged in the service of his country as an officer in the army.

In the same affidavit Mrs. Burton states that Pico did not ratify the sale made by Forster while Lopez and his associates were in possession, but never objected to the possession of General Burton; "and since my husband's death said Pico has, in favor of myself and my children, ratified and confirmed the claim of my husband and ourselves to the land, and for our protection and security has executed and delivered to me a deed of conveyance of the land to myself, which deed is duly acknowledged and recorded in the county of San Diego, where the land lies."

"I did not know, and have never heard until about a month ago, that an absolute grant of the land had been made by Manuel Victoria to Don Pio Pico, and am confident that my husband was never aware of the fact while he was in this state." etc.

The affidavit of Pio Pico which had been filed in the United States district court was also put in evidence by respondents. It was filed in the district court August 26, 1870, by Mrs. Burton. In this affidavit Pico states that he did not present the petition to the commissioners for confirmation because Forster had sold the land and others had taken possession, and he states: "Al-

though I never confirmed the agreement entered into by Don Juan Forster as my agent and Bonifacio Lopez, Phillip Crossthwaite, Richard Rust, and William E. Rust, I have confirmed the land to the heirs of General H. S. Burton, late of the army of the United States, who succeeded to the interests of the parties above mentioned, and with that object I have conveyed said rancho of 'Jamul' to the widow of General Burton by deed which is duly executed, acknowledged, and recorded, and I have no interest or claim in the land."

Respondents also read in evidence a writing bearing date August, 1870, executed by Pio Pico, in which the contract made by Juan Forster is set out in full, after which it proceeds: "Now, therefore, in consideration of the sum of five hundred dollars to me in hand paid by each of the parties named in said instrument as the parties of the second part, and for divers other good and sufficient considerations thereunto moving, I, said Pio Pico, have ratified, confirmed, and made valid, and by these presents do ratify, confirm, and make valid, the said agreement," etc.

At the time of the execution of this instrument Pio Pico did not own the land, having conveyed the same three months before to Mrs. Burton to have and to hold for herself and her heirs forever, and for none others. He was not, therefore, in a position that he could ratify the contract, had it been capable of being ratified by him, which it was not. No previous authority given to Forster could have made this contract the contract of Pio Pico. It did not purport to be his contract or to bind him. By it Forster simply undertook to procure a deed from Pico or pay damages.

It may be doubted whether under any circumstances a ratification could be made after General Burton's death, which would have the effect of causing the title to vest in his heirs by succession. Title cannot be conveyed to the dead. But it may be conceded that had there been a contract which purported to bind Pico, and which was therefore capable of ratification, and that Burton had become the owner of such contract, and a ratification of this contract after Burton's death and conveyance to his heirs in performance thereof, the title, though not strictly acquired by decedent, would have been subject to administration in

Burton's estate, or at least in some mode might have been made subject to administration. Burton, however, had no contract which purported to have been made by Pico, and which could be made the contract of Pico by ratification, and had it been capable of ratification, still, before the attempt to ratify, Pico had parted with his interest in the property.

The formal attempt to ratify must then be left out of the case. But it is said that General Burton was in possession claiming under Pico, and that Mrs. Burton used her position as his widow and heir to obtain the deed from Pico and the confirmation of the claim by the United States court, and cannot now deny that the title was acquired for the benefit of the estate.

It is not really proven in this case by any competent evidence that General Burton ever purchased the rights of Lopez and others under the contract with Forster. He most likely did acquire from them the possession of the land. Mrs. Burton's affidavit shows that General Burton never knew that Pico had a grant for the land other than the provisional grant of 1831, and, of course, he knew that conferred no title. Indeed, Mrs. Burton attributes Burton's delay to prosecute the claim to his ignorance of the fact that Pico had any title. Burton's appearance was entered while he was an invalid out of the state, and Mrs. Burton's affidavit also shows that he never paid any attention to the claim other than to employ attorneys.

Ignorance of the existence of the grant is the only explanation that can be given of the fact that nothing was done in performance of the Forster contract and no attempt made to get a deed from Pico, and of the failure to prosecute the claim for confirmation. I think that the evidence fails to show that Burton did claim under Pico. If this were otherwise, I still fail to find anything in the facts which would estop Mrs. Burton from acquiring title for herself.

The next question is whether there was anything in the proceedings had in the United States district court which will conclude those claiming under Mrs. Burton and her children.

On the 26th of August, 1870, on motion of Mrs. Burton, an order was entered reciting that it appeared that General Burton was the real claimant, and that while prosecuting the

claim in the name of the original grantee was ordered east and lost his life in the Civil War, and therefore no laches could be attached to him for not prosecuting the claim, and therefore a re-hearing was granted in favor of his widow and children who were his sole heirs.

September 21, 1870, an order was entered reciting that Henry S. Burton died seised and possessed of Jamul, having purchased it in his lifetime, and substituting the names of Mrs. Burton and her two children as claimants in lieu of Pio Pico.

On the same day the decree of confirmation was entered, which contains the following: "This court does hereby order, adjudge, and decree that the claim of Maria A. Burton, Nellie Burton and Henry H. Burton is a good and valid claim, and the same be and is hereby confirmed to them, as the legal representatives of the said Henry S. Burton, deceased."

The patent was issued in October, 1876, and granted to Marie A. Burton, Nellie Burton and Henry H. Burton, widow and heirs of Henry S. Burton, deceased, and to their heirs and assigns, the tract, etc; to have and to hold the said tract to the said Maria S. Burton, Nellie Burton, and Henry H. Burton, widow and heirs of Henry S. Burton, deceased, and to their heirs and assigns forever."

It was not the province of the United States district court to determine who the heirs of General Burton were, or whether the property accrued to the parties named by inheritance or otherwise. These recitals in the orders and in the judgment bind no one and are not evidence of the facts recited even as against the parties to the judgment. (Code Civ. Proc., sec. 1908; *Lillis v. Emigrant Ditch Co.,* 95 Cal. 553; Freeman on Judgments, sec. 257.)

At the time of the entry of the decree of confirmation neither of the parties named was the legal representative of General Burton in any other sense than that they were heirs, but not the only heirs of General Burton. He had been married previously to his marriage to Mrs. Maria A. Burton and had other descendants capable of inheriting.

After the confirmation of the grant, to wit, in 1872, Mrs. Burton and her two children mortgaged the land to Maurice Dore to secure a loan of ten thousand dollars. Mrs. Burton then

claimed and represented to Dore that she and her children were sole owners of the land. Indeed, Mrs. Burton and her children always so claimed until Dore commenced a suit to foreclose his mortgage, when in her answer filed August 26, 1880, she admitted that she had believed that the land belonged to herself and children, but had discovered that it was community property of herself and General Burton. Had she been able to pay the debt due on the mortgage probably she would never have discovered that Jamul belonged to the estate.

Since these recitals in the proceedings in the United States circuit court do not bind those claiming under the patent, are not even competent evidence tending to prove the facts, and were received over the objections of appellants, who now insist upon the rulings as error, such facts, unless otherwise proven, have no legitimate bearing upon the question here involved. We come then to the effect of the patent.

It may be noted here that the grant is not to the grantees *as heirs*. It is to Maria A. Burton, Nellie Burton, and Henry H. Burton, widow and heirs of Henry S. Burton, deceased.

2. It is not to the heirs of the intestate, but to the persons named, their heirs and assigns. This is, of course, the plainest possible indication that they held for themselves.

3. The persons named were not the only heirs, nor even the only children of Henry S. Burton.

We are also to notice that had all the heirs been named, still the title vested in them by the patent was as tenants in common owning equally, and not according to our laws of succession. As before stated, the district court had no jurisdiction over probate matters and could not declare the succession.

It is admitted by all that the legal title was by the patent vested in the grantees named, and it seems from the authorities that it was not by virtue of the recitals in the patent made subject to any trust in favor of anyone. On its face it was an absolute title.

In *Christy v. Fisher*, 58 Cal. 256, it was held that, although a patent was issued to Halleck, Peachy, and Van Winkle, as executors of Joseph L. Folsom, deceased, yet the persons named, though not in fact executors, could convey a complete title to the land.

In *Hartley v. Brown,* 46 Cal. 202, Antone Moria Armijo was the original grantee. He died before confirmation, and the grant was confirmed to his heirs and the patent was to them. The heirs conveyed the land to the plaintiffs in that action before the issuance of the patent; the defendants claimed under a probate sale made in the estate of the original grantee. It was held in the absence of further showing that the conveyances direct from the heirs must prevail over those claiming under a probate sale.

In all these cases the opposing equities do plainly appear, while in the case at bar there were none. The cases are cited to show that the recitals in the patent do not imply a trust, that if the title was received in trust for Burton's estate that must be shown by evidence *aliunde.* Here Burton was not the grantee, nor the petitioner for confirmation, and never acquired any right or title, legal or equitable, from such grantee, nor did he hold a contract which purported to vest in him any such right, and, if it could be held that he did have a contract, I think it is fully shown that it never was ratified.

It is said that the mortgage to Maurice Dore was in form a quitclaim, and having been given before the patent was issued did not carry the after-acquired title. I am not sure that plaintiff has any concern in that question, but there is nothing in the proposition.

It has been uniformly held that the patent issued to the confirmee of the Mexican grant takes effect by relation as a deed of the United States at the date of the presentation of the petition for confirmation. (*Moore v. Wilkinson,* 13 Cal. 478; *Touchard v. Crow,* 20 Cal. 150; 81 Am. Dec. 108; *Clark v. Lockwood,* 21 Cal. 220; *Schmitt v. Giovanari,* 43 Cal. 617; *Bihler v. Platt,* 52 Cal. 550; *Landes v. Brant,* 10 How. 348, 373; *Beard v. Federy,* 3 Wall. 478.)

We start with the title in the petitioner at that date, and titles subsequently derived from him in any legal mode are valid, no matter to whom the patent may subsequently be issued. Nor do purchasers intermediate the filing of the petition and the patent acquire a mere equity; nor, if such intermediate rights are mere equities, are they disturbed by the subsequent patent.

It is contended by the plaintiff that appellants are estopped

from asserting any claim to the Rancho Jamul by the judgment rendered in a suit to quiet title brought by G. W. B. McDonald, administrator of the estate of Henry S. Burton, deceased, in 1883, against Leach, Capron, and others. Dore having foreclosed his mortgage given by Mrs. Burton and children, purchased the property at the foreclosure sale through his agent, and in 1883 sold and caused the land to be conveyed to Wallace Leach and John G. Capron. They executed to his agent, Bayley, a mortgage to secure the payment of four thousand dollars, which was the purchase money or a part thereof.

Some few months afterward, to wit, on December 21, 1883, McDonald, as administrator of Henry S. Burton, deceased, commenced an action against Leach, Capron, and others to have it adjudged that said Rancho Jamul was property of the estate subject to administration, and that the legal title held by Mrs. Burton and her children was held in trust for said estate and "to vest hereafter in this plaintiff as administrator and to be disposed of by him in due course of administration."

Dore's mortgage was duly recorded before this action was commenced, but neither Dore nor Bayley were made parties or served with process, and neither appeared in or in any mode participated in the action.

April 28, 1887, judgment was entered in that action to the effect the rancho is, and was, the property of the estate of Henry S. Burton, deceased, and subject to the administration thereof, and that all title held by said defendants Leach, Capron, and Ingraham, or either of them, was declared to be held in trust and for the use and benefit of said estate. Of course, the estate of a deceased person is not a person or an entity capable of acquiring or holding title, and the only rational meaning of this decree is that the rancho was part of the estate of Henry S. Burton, deceased, and that the beneficial interest therein had devolved upon Mrs. Burton and her children as heirs of General Burton. Plaintiff derives his title through a probate sale in the estate of Henry S. Burton made in 1895.

I think it clear that the appellants here are not bound by the judgment in the former suit. It is not an estoppel as to them. It is suggested that the action to determine conflicting claims to real estate under our code is *in rem* and binds the whole

world. Otherwise, an action of that character cannot be maintained against claimants who cannot be personally served. There is much plausibility in the argument that it is an action of that character, just as a suit to foreclose a mortgage may be so regarded. But neither in this case nor in actions of foreclosure is provision made for the notice to all interested, whether parties to the record or not, and it has never been held that judgments in such cases are conclusive except upon parties and their privies. They are not in the full sense actions *in rem*, but so far only that personal service of process is not required to give jurisdiction. The effect of a judgment as an estoppel is declared in section 1908 of the Code of Civil Procedure. It is true Dore claims under Leach and Capron, who were parties to the action. Dore was then, however, a mortgagee, and his mortgage had been duly recorded; when his mortgage was foreclosed his title derived from a sale under the decree dated back to the date of the mortgage, which was prior to the commencement of the action. (Jones on Mortgages, sec. 1654; *Brady v. Burke*, 90 Cal. 6.)

But it is contended that, conceding that the judgment in the case of *McDonald v. Burton* is not conclusive as an adjudication, it should be so regarded as an authority. The facts, it is said, were substantially the same, and that case was twice appealed to this court. (*McDonald v. Burton*, 68 Cal. 445, and same case under title of *Burton v. Burton*, 79 Cal. 490.)

In the first appeal the facts are recited at length, and the principal ones correspond very closely to those here considered. I do not understand that it was there held that the decree of confirmation and the patent by their terms show that the title was received by the patentees in trust for the heirs of Henry S. Burton, but the conclusion was founded mainly upon the evidence of ratification found in the record. In some important respects the facts cited as tending to show ratification differ from those now presented. I notice three which seem to be important: 1. It is said that Pico ratified the sale made by Forster without receiving any consideration from her. There is no express evidence in the present record that Mrs. Burton actually paid Pico for his deed, but all the presumptions are very strong to that effect. The facts recited in the attempt at a formal ratification are that Pico had received five hundred dollars from

each of the parties of the second part to the agreement with Forster. Both Pico and Mrs. Burton testify, in effect, that he had never ratified the agreement in their favor, but only in favor of Mrs. Burton. Of course, the deed imports a consideration, and it is not to be supposed that he transferred all this land, to which it was then found he had a good title, for nothing. 2. It does not appear that it was then apparent that the Forster agreement did not purport to bind Pico or to be his contract, and therefore was incapable of being ratified by him. 3. It did not then appear that the parties named in the decree and patent were not the only heirs of General Burton. That fact now plainly appears, and, in my opinion, has an important bearing upon the question of ratification. It throws light upon the intention of Mrs. Burton in taking the deeds from Pico, and explains the extraordinary clause in the deed from Pico to her, "Maria A. Burton, her heirs and assigns, are to have and hold said rancho to and for her and their benefit, and for none others." It is no wonder that she always asserted that the property did not belong to the estate of General Burton, but was the individual property of herself and children. Where she procured the money with which she paid Pico does not appear, unless in the evidence which tends to show that she used a portion of the money which she got from Dore to pay the expense of procuring the confirmation.

The decision in the former case, being based upon facts materially different, cannot, in my opinion, be taken as controlling here. It does not constitute the law of the case, and, unless founded entirely upon the supposition that title accrued to General Burton through the ratification referred to, it is opposed to the cases already cited upon the effect of the confirmation and patent, and also to the line of decisions commencing with *Estrada v. Murphy,* 19 Cal. 248, and also to the following cases in the supreme court of the United States: *Hogan v. Page,* 2 Wall. 605; *Carpenter v. Rannels,* 19 Wall. 138; *Steinbach v. Stewart,* 11 Wall. 566.

In *Hogan v. Page, supra,* it is said that the landoffice at an early day, to avoid the necessity of determining derivative titles, adopted the formula of issuing the patent in terms to the original applicants or his legal representatives, and that the formula "or

his legal representatives" embraces representatives of the original grantee in the land by contract, such as "assignees or grantees, as well as by operation of law." Substituting the phrase "original petitioner" for "original grantee," this is the precise effect, as I understand it, which has been given to a patent in confirmation of a Mexican grant in California, although no such formula has been used. Under this rule it is not necessary that the United States district court should inquire as to the derivation of title from Pico, nor did it. The recitals in various orders in regard to Henry S. Burton have reference only to the question of laches in the prosecution of the claim. The court was made to believe that Henry S. Burton was the real claimant, and because he was in the service of his country excused the delay. This was not an adjudication of that fact, nor do I see how the use of this pretense can estop Maurice Dore from showing that as matter of fact General Burton never had a pretense of title in law or in equity, and never knew that a grant had been made to Pico. The court had no occasion to determine who were the legal representatives either of Pico or Burton. Whoever received the patent, the title would inure to those who could derive title from Pico subsequent to the filing of his petition with the United States land commission. The sale to Lopez and others was prior to that date, and it is only through the deed to Mrs. Burton that any derivative title can be shown. Rights founded upon this contract which antedated that time, even had Pico been the contracting party, could not be recognized save in a court of equity.

The plaintiff avers a legal title and asks to have it so adjudged. He cannot now in lieu of that have it adjudged that he has an equitable title and that defendants hold the legal title in trust for him. (*Von Drächenfels v. Doolittle,* 77 Cal. 295; *Harrigan v. Mowry,* 84 Cal. 456; *Burris v. Adams,* 96 Cal. 667.)

If such a suit could be maintained, it would, as pointed out by Judge McFarland in the last case cited above, reverse the present rule, which requires a party claiming to have equities to set them up. A person claiming that an adverse title was fraudulently acquired, and that he is entitled to have it conveyed to him, might sue to quiet title, and thus avoid the necessity of setting up the facts constituting the alleged fraud. This may not be done.

The learned judge of the trial court found that plaintiff had the legal title. Had the title come to the heirs of Burton by succession, this would have been correct; for in such case the legal title would have been in the heirs, subject to being divested by appropriate proceedings in the administration of the estate of Henry S. Burton. But, since it could not have been so vested by the decree of confirmation, and the patent does not purport to grant the land to them as the representatives of Burton, it cannot be held that they held the title subject to administration.

In 1887 Maggie Leach, as executrix of Wallace Leach, then deceased, commenced an action under section 1664 of the Code of Civil Procedure to determine heirship to the estate of Henry S. Burton. In her complaint she described the property here in controversy, and claimed title thereto derived from the heirs of Henry S. Burton, deceased. Maurice Dore was served with summons in this proceeding, but did not appear. It was adjudged that the estate of Wallace Leach owned an undivided five-sixths of the property as grantee of some of the heirs of Henry S. Burton, deceased. Plaintiff contends that this judgment concludes the heirs of Maurice Dore; that they cannot deny that the property belongs to the estate of Henry S. Burton, and that the title derived from a subsequent foreclosure of the mortgage against the estate of Leach was simply the right of Mrs. Burton and her children as the heirs of Henry S. Burton. Section 1664 is in article 11 of chapter XI of title XI, and concerns distribution and final settlement of estates of deceased persons. The proceeding is a step in the distribution of estates. The purpose is to determine heirship and the ownership of property of the estate, and the decree is made conclusive only in distribution and of title to property of the estate. It provides no means of determining adverse claims, or what property belongs to the estate. Had Dore appeared and alleged that his claim was that the described property did not belong to the estate, he would not have been heard. The decree did not affect the claim of the appellants.

In 1889 the administrator of the estate of Henry S. Burton, deceased, by virtue of the decree in the case of *McDonald v. Burton*, above mentioned, was put into possession of Rancho Jamul.

He continued in possession as such administrator until after the administrator's deed to plaintiff, February 18, 1895. Respondent claims that title as against the appellants, if they claim adversely to the estate, has been acquired by the statute of limitations. There are two answers to this contention:

1. So far as appears, appellants have not even yet been able to procure a deed to themselves conveying the legal title to them under their decree of foreclosure. They have had, therefore, no right of action at law to recover the property. *(Leonard v. Flynn,* 89. Cal. 535; 23 Am. St. Rep. 500.)

2. While the administrator was in possession no taxes were paid. The rancho was assessed for taxes each year, and the taxes were regularly allowed to become delinquent, and under the statute the land was sold to the state. After the probate sale in 1895 the administrator redeemed the property from these sales, by paying to the state the required amounts, and received certificates showing that a redemption had been effected.

Section 325 of the Code of Civil Procedure, in addition to the requirements as to the character of the possession in other respects, provides that in no case shall the adverse possession be considered established, unless it be shown that the land has been occupied and claimed for the period of five years continuously, and the parties have paid all taxes which have been levied and assessed on the land. It appears, then, that while the administrator was maintaining his possession, which it is claimed was adverse, he did not pay the taxes which were assessed upon the land, or any portion thereof, but, on the contrary, allowed the land to be sold for the delinquency. No taxes were paid, even if such redemption could be called a payment of taxes, until he ceased to have or to claim any right to possession.

But, though the redemption had been effected while he was still in possession claiming title, it would not have been a compliance with the law. If there is anything of benefit to the state contemplated by this anomalous law, it is that it will have a tendency to induce people to pay their taxes, and not compel the state to take the title subject to redemption. If it is an element in the adverse possession tending to show good faith, certainly during those years in which the taxes have not been paid the possession lacks an essential element required in the

statute. During all the years in which the delinquency was allowed, the true owner might forbear suit because of his knowledge that the person in possession had not paid taxes, thereby indicating that he was not holding adversely.

The plaintiff, I think, is not in a position to invoke the statute of limitations.

Holding these views I have not found it necessary to consider the appellants' alleged equities, or whether they should have been allowed to amend their answer and plead the statute of limitations.

The judgment and order appealed from are reversed, and a new trial awarded.

McFarland, J., and Henshaw, J., concurred.

Hearing in Bank denied.