[Civ. No. 8564.   Third Dist.   Mar. 21, 1955.]

THEODORE A. KOHLER, JR., as Administrator, etc., Respondent, v. WILLIAM BRISTOW et al., Appellants.

Walter B. Gleason and Norman J. Ronald for Appellants.

Lynne Kelly and William J. Cassettari for Respondent.

SCHOTTKY, J.—This action was commenced on September 20, 1939, by Lila M. Champion, as the administratrix of the estate of Joseph Hustler, deceased, and the San Juan Gold Company, a Nevada corporation, to quiet title against defendants. The complaint alleged "that plaintiffs, by themselves and their predecessors in interest, have been in the actual, exclusive and adverse possession of the real property hereinafter described continuously for more than twenty years prior to the filing of this complaint, claiming to own and owning the same in fee against the whole world, and have paid all taxes of every kind levied or assessed against said real property during the period of five years continuously next preceding the filing of this complaint." Defendants in their answer denied the allegations of the complaint and alleged that they had claims and rights to the property which were superior to those of the plaintiff. Following a judgment in favor of plaintiffs in the first trial, defendants' motion for a new trial was granted. At the beginning of the second trial counsel for plaintiff San Juan Gold Company made a motion to dismiss the complaint as to that plaintiff, which motion was granted, and the trial proceeded with the only plaintiff being the above-named plaintiff who had since the filing of the action been substituted in the place of the former administratrix of the estate of Joseph Hustler.

The trial court found in accordance with allegations of the complaint hereinbefore set forth and entered a decree quieting the title of plaintiff against the claims of defendants. Defendants' motion for a new trial was denied and defendants have appealed from the judgment.

Appellants contend that the evidence is insufficient to support a judgment in favor of respondent either on the basis of the record title or on the ground of adverse possession,

and also that the trial court committed prejudicial error in admitting certain documents in evidence.

The two parcels involved in this action (comprising a total of approximately 140 acres) constitute a part of a large tract of hilly and brushy placer mining ground in Nevada County known as the Patterson Patent, consisting of approximately 500 acres. On November 1, 1879, the United States government issued a patent covering this Patterson Patent to three trustees, namely, Joseph Hustler, John Nankervis and M. Fitzpatrick, the Joseph Hustler named in the patent being the decedent whose estate respondent herein represents as administrator. This patent was recorded on December 31, 1900. These three trustees received this patent as trustees for approximately 23 persons named in the patent, one of them being Joseph Hustler. These beneficiaries of this patent (and trust) were a group of early day pioneers who had located and owned various placer mining claims which together made up the area embraced by this patent. These individuals, in order to facilitate the securing of a final title to their respective parcels, conveyed their possessory mining estates to the aforementioned three trustees by a deed of trust dated August 14, 1877, with the object shown that these trustees would proceed to secure a patent covering the entire area and then deed back to the various beneficiaries their respective parcels. On September 25, 1899, Joseph Hustler and Michael Fitzpatrick, as trustees of the Patterson Patent, deeded certain land to Joseph Hustler.

The evidence in the case consisted largely of documents. Respondent sought to prove his record title by introducing in evidence the trust deed of 1877; the patent from the United States of America to the trustees; the probate file (No. 400) of the estate of John Nankervis, to show that he died in 1888, so that subsequent deeds from the two remaining trustees were not void or invalid; the deed of 1899 from Hustler and Fitzpatrick, as trustees of the Patterson Patent, to Joseph Hustler; and the probate file in the estate of Joseph Hustler.

It appears from the record that on April 27, 1878, Joseph Hustler executed a mortgage of some property to John Ryan, the property being described as "the Donovan claim or Ryan and Donovan claim situate in the Cherokee Mining District, and more particularly described in the survey and map made by D. B. Merry in 1872, and which is here referred to and made a part hereof." This was introduced to show that even before the patent was issued Hustler was claiming ownership of the property. Ross Taylor, county surveyor of Sierra

County, called by respondent as an expert witness, testified that the property described in this mortgage and other documents was the same as that described by the complaint, and also the deed of 1899 was introduced to show its description and that it was the same ground as described in the complaint. Respondent introduced in evidence a mining survey of Hustler and Sons, and the plat thereof, filed by D. B. Merry on July 23, 1874. Merry was county surveyor of Nevada County at that time. Respondent also introduced in evidence a deed dated September 15, 1874, from Matthew Kilroy to Hustler and Sons; this was used by Mr. Taylor as a foundation for including the land described in this deed as part of that described in the complaint.

Mr. Taylor testified that he conducted a survey on the ground of the lands described in the complaint and he related in detail the events regarding the survey. As a basis of substantiating the correctness of his survey he used several of the documents aforementioned, and also some other old maps and surveying notes. Many of the references in the old deeds and surveys are to natural objects which no longer exist, but Mr. Taylor testified that to the greatest extent possible his survey accurately portrayed the lands as held by Mr. Hustler, and that such is the same as the lands described in the complaint. Mining operations on the lands in the community over the last 40 to 50 years have caused quite a change in the topography of this area.

Appellants introduced in evidence the probate file (No. 3939) of John Nankervis, which showed that this Mr. Nankervis died in 1917. To show that this John Nankervis was the one who was a trustee of the Patterson Patent, defendants also introduced into evidence a letter from this John Nankervis to Mr. John T. Morgan, a prominent banker of Nevada City, California, dated October 31, 1916, in which the writer discusses the fact of his being a trustee of the Patterson Patent.

Appellants attack the record title of respondent by questioning the validity of the 1899 deed to Hustler, on the grounds that being a trustee he had no right to convey to himself and that the deed was void because it lacked the signature of the trustee Nankervis, who they allege died in 1917 and not in 1888 as alleged by respondent. Appellants also contend that the deed is insufficient to serve as a basis for the adjudication of a fee title in the decedent in the parcels involved in this action in that the description

in the deed does not relate to the particular parcels described in the complaint.

We believe that whether or not the John Nankervis, who was a trustee, was still living at the time the deed from the remaining trustees to Joseph Hustler was executed, was a question of fact for the trial court to determine. There were 23 beneficiaries named in the patent to the trustees and the record shows that all of the deeds issued by the trustees before 1889 were executed by John Nankervis along with the other two trustees and that none of the trustees' deeds after 1888 were executed by Nankervis. The record also shows that while Joseph Hustler was one of the trustees he was also named in the patent as one of the beneficiaries (as were also the other two trustees), and, as argued by respondent, it is a presumption ''That a trustee or other person, whose duty it was to convey real property to a particular person, has actually conveyed to him, when such presumption is necessary to perfect the title of such person or his successor in interest.'' (Code Civ. Proc., § 1963, subd. 37.)

The trial court made no express finding on the issue of whether respondent had proved a record title but apparently based its judgment upon the finding that title of respondent was established by adverse possession. In view of the fact that we are satisfied that the record supports a judgment based on adverse possession it is unnecessary to discuss appellants' contention as to lack of proof of record title in respondent, although we believe that the record would also support such a finding.

With reference to the issue of adverse possession Jerome Coughlan and William Coughlan testified that they had been familiar with the Joseph Hustler property since about 1900, that they had lived in the immediate vicinity all of their lives, that they knew the ground while Mr. Hustler was alive and when he and his boys, William and James, worked the same for mining and that they knew the location of the Hustler house, barn, etc., on the property. It appears that they were familiar with the land claimed by Hustler and its location and· boundaries, that they received permission from Will Hustler to graze and pasture their cattle on the land, that they did so until Joseph Hustler's death and continued doing so up to the time of the trial. It was also shown that whenever cattle belonging to others strayed on the land, the Coughlans chased them off, and that the Coughlans have caused trespassers to be evicted and kept unauthorized persons from mining on the land.

Sometime prior to 1913, Joseph and James Hustler moved to Cherokee to live, but Will Hustler remained living on the land. About 1919 Will Hustler moved to Columbia Hill, but he continued mining the property until 1923 or 1924. From about 1921 on, William Coughlan did some mining on South Shady Creek, which apparently was on the land involved.

About two years before his death Will Hustler lived with Jerome Coughlan. Prior to his death in 1933, Will Hustler executed a gift deed of his rights in the land to May Campbell (sister of William and Jerome Coughlan). From that time on, May Campbell paid the taxes upon the property and the Coughlan men "took charge of the ground because she was not able to go down there." For a period of two years the taxes became delinquent, but were redeemed and the taxes were then kept paid up to the time of trial.

Appellants contend that respondent did not prove possession, that the adverse use was that of others and not by respondent or his decedent, that the grazing of cattle was not a sufficient use, as it was not enclosed land and cattle belonging to others also grazed on this area, that the ground was primarily used for mining purposes and the grazing was limited, that the grazing was not confined to the description as set forth in the complaint, and that the complaint alleges adverse possession in both respondent and the San Juan Gold Company, yet the judgment declares only adverse possession by respondent, and that this variance is fatal. It is also contended that respondent failed to prove payment of the taxes for five years, or that such payment was on the particular parcels described in the complaint, that the taxes were not paid by respondent, but by an independent third party, and that even if payment was in behalf of respondent, since the taxes were allowed to go delinquent in 1934 and the property was not redeemed until 1936, the period of five years was interrupted and therefore respondent's proof on this point failed.

The record shows that respondent proved possession in Joseph Hustler and his sons of the lands involved from at least 1900 to 1913 when Joseph died. After that time all uses and operation of said lands were made and conducted by the heirs of Joseph Hustler, Will and James, and by their tenants or individuals permitted to operate on the lands in subordination of the alleged legal title. The acts in regard to the land by the Coughlans were conducted under permission of the Hustlers to so use the land, and since they were in

privity with the one asserting ownership rights in the land, such acts inured to the benefit of respondent. Possession by the heirs or their successors in interest is properly proven and shown to be possession by the administrator during the period from the death of Hustler to the appointment of his administrator. The possession of the heirs and successors in interest was not hostile in nature to the estate. This is likewise applicable to the payment of the taxes by the successors in interest of the rights of the heirs and therefore payment of the taxes by May Campbell inured to the benefit of the administrator, respondent, in regard to maintaining the present action.

The land was primarily used for mining purposes, but testimony related that the pasturage was considered good, at least along South Shady Creek and wherever the water circulated on the land. Not only did the Coughlans graze their cattle on this land during the years, but William Coughlan also did some mining on the property. Trespassers and other unauthorized persons were removed from or kept off the property. The Coughlans testified that they knew the location of the boundaries of the Hustler property and that they grazed their cattle on it and continually herded stray cattle of others off the land; they also grazed their cattle on other lands, and in the later years from about 1925 on they pastured their cattle during the winter months about 25 miles to the south of the lands involved.

The evidence shows that all the taxes levied or assessed on the lands in question during the period of 1933 to 1940 were paid, as aforementioned, and the tax papers in evidence were the only ones on record with descriptions concerning the lands involved.

■ We do not agree with appellants' contention that since the taxes on the property were permitted to go delinquent in 1934 and there was no redemption until 1936, the interruption of the five-year period defeated respondent's claim of adverse possession. The leading case of *Owsley* v. *Matson,* 156 Cal. 401, 404-405 [104 P. 983], considered this point and the court held that where the tax became delinquent and a sale occurred and redemption was made while the party or his successor in interest was in undisturbed possession and all of this was done in good faith, it was sufficient to bring the occupant within the terms of the statute which requires payment of taxes by him. The Owsley case distinguishes the earlier case of *McDonald* v. *McCoy,* 121 Cal. 55 [53 P. 421],

cited by appellants on this point and points out that in the McDonald case the person in possession had failed to pay any taxes during his possession and the redemption took place after he had ceased to have possession.

There is no merit in appellants' contention that respondent did not prove a sufficient degree of possession of the property, as is apparent from the evidence hereinbefore set forth. Equally without merit is appellants' contention that there is a fatal variance between the complaint and the judgment because the complaint alleges adverse possession as to both respondent and the San Juan Gold Company. A dismissal as to plaintiff San Juan Gold Company was entered at the outset of the action and it is clear that respondent sought by evidence throughout the trial to establish his title. ▮ It is elementary that a variance between pleading and proof is immaterial where a party has not been misled thereby to his prejudice. The rule is thus stated in 21 Cal.Jur. 264, as follows:

"A variance between an allegation and proof is immaterial where it has not actually misled, or could not mislead, the adverse party to his prejudice in maintaining his action or defense upon the merits."

There is no merit in appellants' contentions regarding the admissibility of certain documents and other items as foundational data for the testimony of the witnesses, mainly Mr. Taylor. Many of them were ancient documents within the meaning of section 1963, subdivision 34, of the Code of Civil Procedure, and the objection goes to their weight as evidence rather than to their admissibility. It may be that some of the field notes and maps were not authenticated and were hearsay, but this action was tried by a judge who could give them the weight to which they were entitled. In a case such as this, such evidence is often the best obtainable and the judge is competent to weigh it for what it is worth. Even if the trial court incorrectly admitted any of the documents as contended by appellants, it does not appear that they suffered any prejudice which would warrant a reversal of the case. (Cal. Const., art. VI, § 4½.) ▮ Furthermore, this evidence which appellants claim was erroneously admitted related only to the issue of the record title, and as hereinbefore pointed out there is ample evidence to support the judgment on the ground of adverse possession.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.